In re the MARRIAGE OF Patricia Ann BRANSTETTER and Daniel Edward Branstetter.

Upon the Petition of Patricia Ann Branstetter, Appellee,

And Concerning Daniel Edward Branstetter, Appellant.

No. 92–1329.

Supreme Court of Iowa.

Nov. 24, 1993.

Drew H. Kouris, Council Bluffs, for appellant.

Suellen Overton of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

The marriage of Daniel and Patricia Branstetter was dissolved by a decree that fixed alimony, divided their property, and ruled on Patricia's application for attorney fees. All these matters are raised on appeal, but the principal issue is the award to Patricia of an interest in Daniel's fireman's pension. We modify and affirm on the appeal and affirm on the cross-appeal.

Daniel and Patricia were married in 1963. At that time, Patricia was a secretary, but in 1964 she quit to raise the parties' children. (All of their children are now grown and self-supporting.) In 1976, Patricia obtained a two-year interior design degree and now operates an interior design business out of her home.

Daniel has been employed since 1965 by the Council Bluffs Fire Department. He currently is a fire inspector, earning approximately $36,000 per year with overtime pay. He also receives medical and dental insurance and a modest allowance for food and clothing. He contributes to a fireman's pension under Iowa Code chapter 411 (1991), which is the focal point of this case.

I. *Alimony and General Property Division.*

A. The court's decree divided the non-pension assets of the parties in approximately equal shares. Daniel complains that Patricia received a $30,000 advantage in this division, but this assertion is based largely on his own valuation of their assets. On our review of the record, we conclude that the district court's division was equitable.

B. Patricia complains in her cross-appeal that the amount of alimony was inadequate. She was granted $400 per month for five years, but she requests that we raise it to $1000 per month.

Patricia's interior design business is just getting started. Her earnings are relatively modest at this time, but there is potential for increased profit. Her earning capacity is demonstrated by the fact that she has been employed in the past in the area of interior design at an annual income of approximately $19,000.

We conclude that attributing to Patricia a reasonable employment potential from self-employment, together with the $4800 per year alimony, the allowance to her was sufficient. This is particularly so in view of the fact that the property division gave her a share of Daniel's pension, and it is appropriate to consider the property division when the court sets alimony. *See* Iowa Code § 598.21(3) (amount of spousal support depends in part on the distribution of property under Iowa Code section 598.21(1)); *In re Marriage of McNerney,* 417 N.W.2d 205, 209 (Iowa 1989) (property division and alimony to be considered together).

II. *Division of the Fireman's Pension.*

Daniel challenges the district court's division of his fireman's pension because of the exemption provisions of Iowa Code section 411.13:

The right of any person to a pension, annuity, or retirement allowance, to the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit or death benefit, any other right accrued or accruing to any person under this chapter, and the moneys in the various funds created under this chapter,

are not subject to execution, garnishment, attachment, *or any other process whatsoever,* and are unassignable except as in this chapter specifically provided.

(Emphasis added.)

■ Pensions in general are held to be marital assets, subject to division in dissolution cases, just as any other property. *See In re Marriage of Howell,* 434 N.W.2d 629, 632 (Iowa 1989); *In re Marriage of Bevers,* 326 N.W.2d 896, 900 (Iowa 1982).

This is consistent with this summary of the general rule:

In noncommunity property states having statutes providing for equitable distribution of the property of divorced spouses, it uniformly has been held that contributions made during marriage to a retirement or pension fund, and absolutely subject to withdrawal by the contributing spouse, are subject to division by the divorce court, or at least properly includable in the total assets subject to award or division.

Annotation, *Pension Rights—Division on Dissolution,* 94 A.L.R.3d 176, 232 (1979).

■ Despite this general rule, Daniel points to the broad language of section 411.-13, which prohibits invasion of pensions by "any . . . process whatsoever." This statute is very broad in its prohibitions against alienation, but in the context of a marital relationship it has very limited application. This is so because a court "process" is not the source of the claimant's rights against the pension, but rather the marital relationship itself. While this might appear to be a distinction without a practical difference, courts have uniformly relied on the principle, and the practical arguments in favor of it can hardly be challenged. As one judge has noted:

It would be ironic indeed if a provision designed in part to ensure that an employee spouse would be able to meet his obligations to family after retirement were interpreted to permit him to evade them with impunity after divorce.

*Stone v. Stone,* 450 F.Supp. 919, 926 (N.D.Cal.1978).

As early as 1904, the United States Supreme Court held that despite the broad provisions of the bankruptcy code with re-spect to discharges in bankruptcy, family support obligations would not be discharged. (This was before the bankruptcy act was amended to specifically provide this.) The Court stated that,

[u]nless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children.

*Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390, 394 (1904).

While there are no Iowa cases interpreting the exemption language of section 411.13, we have held that similar exemptions are inapplicable in dissolution cases. In *In re Guardianship of Bagnall,* 238 Iowa 905, 29 N.W.2d 597 (1947), for example, we held that an exemption statute applying to veterans pensions was inapplicable in a dissolution case, despite broad language providing that the pension was exempt "from execution, whether such pensioner shall be the head of a family or not." Iowa Code § 627.8 (1946). We stated:

It is definitely established by the decisions of the courts of the United States and of the states that the exemption against execution or seizure by any legal process, provided in [the Iowa statutes] has no application to awards or judgments of alimony granted to the wife of a divorced veteran. This is in accord with the generally recognized rule and holding of the courts that statutes which provide that property or payments of specified kinds are exempt from judgment execution or liability for debts have no application in the award or collection of alimony or support for a wife or minor child.

*Bagnall,* 238 Iowa at 935, 29 N.W.2d at 612.

*Bagnall* turned on the principle that a claim for spousal support

does not arise from any business transaction but from the marital relation. It is not founded on either an express or implied contract but on the natural, moral, and legal duty of the husband to support

his wife, and the public policy of the state, as established by legislation and judicial decision. The wife's right of support is recognized in all civilized countries. It exists during the marriage but it is not a debt owing by the husband in its legal or common acceptation.

*Id.* at 938, 29 N.W.2d at 614. Similarly, we said in *Szymanski v. Szymanski,* 188 Iowa 931, 176 N.W. 806 (1920):

> In any event, the court has full authority to set aside specific property of the husband to the wife as alimony, whether exempt or not. Ordinarily, exemptions are allowed for the benefit of the family. It is true that the exemption of pension money, or property purchased therewith, extends to every pensioner, whether the head of a family or not; but surely, it was not the intention of the legislature, in exempting pension money, or property purchased therewith, from execution, to 'change its status with reference to the inchoate rights of the wife to dower or alimony therein.... Whether exempt or not, the authority of the court to award the same to [the wife] as alimony cannot be questioned.

*Id.* at 936, 176 N.W. at 807.

The rationale for holding exemption statutes inapplicable in the context of a dissolution case is of long standing. In an early case involving a homestead exemption, *Daniels v. Morris,* 54 Iowa 369, 6 N.W. 532 (1880), we stated:

> It cannot be questioned that in a suit for divorce and alimony the law of homestead has no application. The homestead is for the benefit of the family, and not for the husband alone. In a suit for divorce and alimony the court in adjusting the rights of the parties is not precluded from making such a division or disposition of the homestead between the parties as may appear to be just and equitable....

*Id.* at 371, 6 N.W. at 533.

There are many cases from other jurisdictions holding similar exemptions inapplicable in dissolution cases. *See, e.g., Faus v. Faus,* 319 N.W.2d 408, 411 (Minn.1982) ("Even where the exemption provision is absolute on its face, it has been held that exemptions contained in pension statutes are inapplicable to a claim for alimony or child support."); *Crace v. Crace,* 396 N.W.2d 877, 879–80 (Minn.App.1986) (held exemption in pension statute prohibiting execution, levy, attachment, garnishment, "or other legal process" nevertheless did not preclude division in a dissolution case because such exemption only applies to "process"); *Hodson v. New York City Employees' Retirement Sys.,* 243 App. Div. 480, 482, 278 N.Y.S. 16, 17–18 (1935) (statute prohibiting "execution, garnishment, attachment, or any other process whatsoever" held inapplicable in family support case); *Zwingmann v. Zwingmann,* 150 App.Div. 358, 359, 134 N.Y.S. 1077, 1078 (1912) (exemption from "all process and proceedings" held not to prohibit division in dissolution); *Courtney v. Courtney,* 251 Wis. 443, 449, 29 N.W.2d 759, 762 (1947) (husband, employee of police department, contributed to policemen's pension; court held that despite exemption for "any process or proceeding whatsoever" the pension could nevertheless be divided by the court in a dissolution case).

As the court in *Crace* noted,

> [t]hese process exemptions do not deal with the definition of marital property for dissolution cases; they do not overcome the expansive statutory definition of marital property....

*Crace,* 396 N.W.2d at 879–80.

Federal cases have held that the antialienation provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1056(d)(1), impliedly make exceptions for claims in dissolution cases. *See, e.g., Operating Eng'rs Local Pension Trust Fund v. Zamborsky,* 650 F.2d 196, 199 (9th Cir.1981); *Cody v. Riecker,* 594 F.2d 314, 315 (2d Cir. 1979); *AT & T v. Merry,* 592 F.2d 118, 121 (2d Cir.1979).

The general rule is that rights and benefits under public pension and retirement plans, such as those administered for civil servants and other state or municipal employees, are treated no differently than rights and benefits under private pension plans, that is, they are treated as marital

property insofar as they relate to employment during the marriage. . . .

The nonassignability provision of government pension statutes has been held not violated by equitable distribution of assets arising from claims under such a statute since equitable distribution of marital assets is not tantamount to an assignment.

It has been further held that equitable distribution is not barred by the fact that statutes generally provide that state pensions are not subject to execution, garnishment or attachment.

24 Am.Jur.2d *Divorce and Separation* § 907, at 892 (1983) (footnotes omitted).

■ Although the award of pension rights in this case was denominated as a "property" division, it is a lot like spousal support, and we believe the same rules should be applicable to both. As one case has noted, it is sometimes better to classify the division of the pension as a property division rather than spousal support so the allowance is not lost on death or remarriage. *See Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn.1983).

■ There are generally two ways for a court to divide pension benefits. One is to assign a value to the benefits, based on their present worth, and award that amount to the pensioner's spouse. *See, e.g., Bevers*, 326 N.W.2d at 900. The second method is to award the spouse a percentage of the pension as the benefits become payable. This percentage is based on the number of years the employee contributed to the plan during the parties' marriage in relation to the total years of contribution. *See, e.g., Howell*, 434 N.W.2d at 633.

■ In this case, the district court selected the second option, and we believe it is the only practical one available. Because of the relatively young age at which Daniel expects to retire (fifty-five) and the amount of the pension expected (approximately $1500 per month), it is not realistic to attempt a division under the first alternative. While there was no evidence in the record as to the present value of a one-half interest in the

pension, we are able to determine from the record that there clearly are not sufficient assets to award the present value of her share to Patricia. We therefore believe the district court was correct in applying the percentage method under the second alternative.

In determining the amount to be awarded to Patricia, the court gave her half of an amount determined by a fraction, the numerator of which was the total years of marriage and the denominator of which was the total years of contribution to the plan. Daniel complains that, if he were disabled immediately, Patricia would receive over half his pension benefits. That is so because the parties were married more years than he would have been employed with the fire department. The numerator would thus be greater than the denominator. We do not believe that was the intent of the district court.

We therefore modify the award of pension benefits by granting to Patricia one-half of the percentage of his pension benefits determined by a fraction, the numerator of which is the number of years he contributed to the plan during the parties' marriage and the denominator of which is the total number of years he contributes to the plan prior to drawing benefits. Both parties shall execute all instruments necessary to effectuate this division, and Daniel shall immediately notify his plan administrator of this award.[1]

### III. *Attorney Fees.*

Patricia complains in her cross-appeal that the court should have granted her attorney fees. The trial court, we believe, correctly denied them, and we affirm.

**AFFIRMED ON APPEAL AS MODIFIED; AFFIRMED ON CROSS–APPEAL.**

---

**1.** The parties apparently agree that the pension in this case is not subject to division as a "quali-

fied domestic relations order" under federal law.