IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
(HEARD AT MEMPHIS)

FILED

January 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

C. WINSTON GRAGG,

    Plaintiff/Appellee,

v.

NELLIE C. GRAGG,

    Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

FOR PUBLICATION

**Filed: January 31, 2000**

Shelby Circuit

Hon. Kay S. Robilio,
Judge

Appeal No.
W1998-00734-SC-R11-CV

**Defendant/Appellant**
Thomas R. Prewitt, Sr.
ARMSTRONG, ALLEN, PREWITT,
GENTRY, JOHNSTON & HOLMES, PLLC
Memphis, Tennessee

**Plaintiff/Appellee**
Hal Gerber
GERBER LAW OFFICE
Memphis, Tennessee

# O P I N I O N

AFFIRMED.                                                                DROWOTA, J.

The issue of first impression in this appeal is whether, under Tennessee law, disability benefits from a private disability insurance policy acquired with marital funds during the marriage are subject to distribution upon divorce as marital property. See Tenn. Code Ann. § 36-4-121 (1996). We conclude that disability benefits replace lost income and are not marital property subject to distribution upon divorce. However, such benefits may be considered by a trial court when determining alimony and child support obligations. Accordingly, the judgment of the Court of Appeals is affirmed.[1]

## BACKGROUND

The facts pertinent to the legal issue in this appeal are undisputed. The appellant, Nellie C. Gragg, and the appellee, G. Winston Gragg, were married on September 4, 1971. The parties separated on December 10, 1993, and Dr. Gragg filed the present action for divorce on September 12, 1994.

Dr. Gragg is a medical doctor specializing in anesthesiology. During the course of the marriage, he obtained two policies of disability insurance. The first policy was issued on May 13, 1977 by Provident Life and Accident Insurance Company and provides for disability benefits of $2,000 per month during total disability until Dr. Gragg attains the age of sixty-five.[2] The second policy was issued by Continental Assurance Company on July 15, 1988 and provides for disability benefits of $5,000 per month with an automatic annual increase of five percent to account for cost of living increases. This policy provides that disability benefits will continue to be paid during Dr. Gragg's lifetime so long as he remains disabled.

---

[1]Oral arguments were heard in this case on November 18, 1999, in Memphis, Shelby County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2]When the trial court entered its final decree in March of 1998, Dr. Gragg was fifty-three years of age and will therefore continue receiving the $2,000 monthly benefit for an additional twelve years so long as he remains totally disabled.

Dr. Gragg became totally disabled in late October of 1994, and likely will not ever be able to resume his practice as an anesthesiologist. At the time of trial, the parties stipulated that Dr. Gragg was receiving monthly benefits under the two disability polices in the amount of $7,750 and that this amount would increase to $8,000 per month beginning in October of 1998. The parties stipulated that the premiums paid for these two polices up to the time when Dr. Gragg became disabled had amounted to $45,000 and had been paid with marital funds earned by Dr. Gragg. Each policy includes a provision for waiver of premiums during the period of total disability, so Dr. Gragg has paid no premiums since his disability commenced in October of 1994. The parties also stipulated that all marital property should be divided equally between them.

The trial court found that "[a]s a matter of law, all benefits paid by the two insurance companies to Husband both before and after the divorce constitute marital property subject to division pursuant to T.C.A. § 36-4-121 and all benefits, beginning with the payments due in March, 1998 and thereafter, should be divided equally between the parties." The decree was later amended to provide that in the event an appellate court held the disability benefits to be separate property belonging to Dr. Gragg rather than marital property subject to distribution, Ms. Gragg should be paid $2,500 per month alimony in futuro until death or remarriage.

Dr. Gragg appealed the trial court's decision with respect to the disability benefits. The Court of Appeals reversed "that part of the trial court's decree which awarded Wife a part of the disability income benefits as a marital distribution." The Court of Appeals disagreed with the trial court's classification of the benefits as marital property and held that the "benefits constitute substituted income to Husband and are available for such obligations as might be imposed by the court." Accordingly, the Court of Appeals affirmed that portion of the trial court's judgment

-3-

which awarded Ms. Gragg $2,500 per month alimony in futuro until death or remarriage.

Thereafter, this Court granted Ms. Gragg's application for permission to appeal to consider whether disability benefits received by one spouse from two private insurance policies are subject to distribution upon divorce as marital property. For the reasons that follow, we now affirm the judgment of the Court of Appeals.

## DISABILITY BENEFITS - CLASSIFICATION

Our analysis of the issue in this appeal necessarily begins with Tenn. Code Ann. § 36-4-121 which defines marital and separate property as follows:

> (b)(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in a case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.
>
> . . . .
>
> (2) "Separate property" means:
> (A)    All real and personal property owned by a spouse before marriage;
>
> (B)    Property acquired in exchange for property acquired before the marriage;
>
> (C)    Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and
>
> (D)    Property acquired by a spouse at any time by gift, bequest, devise or descent.

-4-

Tenn. Code Ann. § 36-4-121(b)(1)(A), (B) & (2) (1996)(emphasis added). We are mindful that the role of this Court in construing statutes is to ascertain and give effect to legislative intent. See Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995). When the language of a statute is unambiguous, legislative intent is to be ascertained from the plain and ordinary meaning of the statutory language used. See Carson Creek Vacation Resorts, Inc. v. State, Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993). However, the issue in this appeal can not be resolved simply by reference to the plain language of this statute. This statute does not explicitly declare that benefits from a private disability insurance contract are marital property, nor does the statute specifically state that such benefits are separate property. Where as here, the parties legitimately have different interpretations of the same statutory language, an ambiguity exists, and we may consider the legislative history and the entire statutory scheme for interpretive guidance. See Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997); Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995); Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994).

Applying these rules, we first note that marital property is broadly defined to include "all" real, personal, tangible, and intangible property acquired during the course of the marriage by either or both spouses and includes "any property to which a right was acquired up to the date of the final divorce hearing." Tenn. Code Ann. § 36-4-121(b)(1)(A); see also Cohen v. Cohen, 937 S.W.2d 823, 826 (Tenn. 1996). The current definition of marital property was adopted in 1983,[3] and, according to its House sponsor, the legislation was intended "to codify existing case law, to define marital property more clearly, and to recognize homemakers' contributions." Kendrick v. Kendrick, 902 S.W.2d 918, 924 (Tenn. Ct. App. 1994). The broad statutory definition of marital property is followed by Tenn. Code Ann. § 36-4-121(b)(1)(B) which states that marital property "includes. . . the value of vested pension, retirement

---

[3]See 1983 Tenn. Pub. Acts ch. 798, ch. 800.

or other fringe benefit rights accrued during the period of the marriage." Use of this broad statutory definition followed by language stating that the definition "includes" specific items indicates that the enumerated items are illustrative, not exclusive. See Kendrick, 902 S.W.2d at 924. In other words, the property interests identified in Section 36-4-121(b)(1)(B) are simply illustrative of the types of intangible property interests that may be classified as marital property. Id. Other types of intangible property interests which are similar to those enumerated in the statute should also be considered marital property.

We have previously held that both vested and unvested retirement benefits constitute marital property under the statutory definitions set out above. See Cohen, 937 S.W.2d at 828. Relying upon the broad statutory definition of marital property and this Court's decision in Cohen, Ms. Gragg argues that the disability benefits at issue are marital property because the premiums were paid with marital funds and because the disability giving rise to the right to receive the benefits commenced during the marriage. In contrast, Dr. Gragg argues that the disability benefits are not marital property. He points out that the illustrative types of intangible property enumerated in Tenn. Code Ann. § 36-4-121(b)(1)(B) are either forms of, or analogous to, annuity insurance and emphasizes that the statute does not mention any type of casualty insurance. See Tenn. Code Ann. § 56-2-201(2) (Supp. 1999) (stating that disability insurance is casualty insurance). Dr. Gragg stresses that, unlike annuity insurance benefits, disability insurance benefits do not represent deferred compensation for services rendered but instead are designed to replace future income which the disabled spouse will be unable to earn because of the disability. Since future income is not considered marital property, Dr. Gragg argues that disability insurance benefits also should not be considered marital property, but should be considered by the trial court only when determining the disabled spouse's alimony or child support obligations. In support of his contention, Dr. Gragg relies

upon an unreported decision of the Court of Appeals which classified disability benefits as income when determining child support obligations.  See Turner v. Turner, No. 01A01-9506-CV-00255, 1997 WL 136448 (Tenn. Ct. App. Mar. 27, 1997).

Clearly, disability benefits have varied characteristics and purposes which make the task of classification problematic.  As one Pennsylvania appeals court explained, disability benefits

> may compensate for the loss of earnings resulting from compelled premature retirement and from a diminished ability to compete in the employment market.  Disability benefits may also serve to compensate the disabled person for personal suffering caused by the disability.  Finally, disability benefits may serve to replace a retirement pension by providing support for the disabled worker and his family after he leaves the job.

Ciliberti v. Ciliberti, 542 A.2d 580, 582 (Pa. Super. Ct. 1988).  Moreover, such disability benefits become payable only when the insured spouse has suffered an injury and has become disabled.  On the other hand, the right to receive disability benefits may have been acquired with marital funds, either by foregoing a higher salary in the case of disability benefits provided by an employer, or by paying premiums with marital funds in the case of a private disability insurance policy.  To complicate matters further, ordinarily some disability benefits will be received during marriage and some will be received after the marriage is ended by divorce.  See Disability Benefits-Classification, 14 No. 9 Equitable Distribution J. 97 (September, 1997).

Like Tennessee, no other state has a statute that either specifically designates disability benefits as marital property or specifically excludes such benefits from the definition of marital property.  Although this lack of explicit statutory guidance has produced a substantial body of case law on the subject, given the differing purposes of disability benefits, courts are split on the proper classification.

Those courts which hold that disability benefits constitute marital property have advanced several rationales for this conclusion. Under one approach, which has been referred to as the "mechanistic approach," courts consider whether disability benefits have been specifically excepted from the definition of marital property by statute. 14 No. 9 Equitable Distribution J. at 98. Disability benefits will be considered marital property unless there is a statutory provision specifically excluding disability benefits from the marital estate.[4]

Another rationale given in support of the mechanistic approach is that disability benefits should be considered marital property because the policy premiums were paid with marital funds or the marital estate acquired the benefits as a form of compensation for spousal labor during the marriage, much like a pension.[5]

However, the majority of courts considering the proper classification of disability benefits have adopted the analytical approach which focuses on the nature and purpose of the specific disability benefits at issue. Under this approach, benefits which actually compensate for disability are not classified as marital property because such benefits are personal to the spouse who receives them and compensate for loss of good health and replace lost earning capacity. However, where the facts warrant, courts utilizing the analytical approach will

---

[4] See, e.g., Mason v. Mason, 895 S.W.2d 513 (Ark. 1995) (holding that husband's employment disability benefits paid in connection with long-term physical problems were marital property because they did not fall within the statutory exemption for personal injury benefits); Morrison v. Morrison, 692 S.W.2d 601 (Ark. 1985) (holding that benefits must be treated as marital property in the absence of a statutory exemption); In re Marriage of Simon, 856 P.2d 47 (Colo. Ct. App. 1993) (holding that disability benefits from a private disability insurance policy acquired with marital funds during the marriage were marital property because such private insurance is not excluded from the statutory definition of marital property); In re Marriage of Smith, 405 N.E.2d 884 (Ill. App. Ct. 1980) (holding that a disability pension is marital property because it does not fall within a statutory exemption); Gnerlich v. Gnerlich, 538 N.E.2d 285 (Ind. Ct. App. 1989) (holding that disability pension is marital property because it was not excepted from the broad statutory definition).

[5] See, e.g., Dunn v. Dunn, 811 S.W.2d 336 (Ark. Ct. App. 1991) (holding that husband's disability benefits were marital property because the benefits constituted compensation in return for past services rendered); Lookingbill v. Lookingbill, 483 A.2d 1 (Md. 1984) (holding that disability pension payments were marital property because such payments are partial consideration for past employment whether maturity of pension depends upon age and service or upon disability); Vanderleest v. Vanderleest, 352 N.W.2d 54 (Minn. Ct. App. 1984) (holding that disability annuity was marital property since husband's right to receive the benefits resulted from his years of employment during the parties' marriage).

separate the benefits into a retirement component and a true disability

component, with the retirement component being classified as marital property

and the disability component being classified as separate property. This approach

has been applied both to disability benefits paid in connection with insurance

coverage maintained by the disabled spouse's employer and to disability benefits

paid in connection with a private policy of disability insurance acquired with marital

funds during the marriage.[6]

---

[6]See, e.g., Villasenor v. Villasenor, 657 P.2d 889 (Ariz. Ct. App. 1982) (holding that husband's civil service disability compensation had both a disability component, which was his separate property, and a retirement component, which was community property); In re Marriage of Saslow, 710 P.2d 346 (Cal. 1985) (holding that disability benefits paid in connection with a private insurance policy should be treated as separate property insofar as they are intended to replace post-dissolution wages and as community property insofar as they are intended to provide retirement income); In re Marriage of Stenquist, 582 P.2d 96 (Cal. 1978) (holding that disability benefits should be analyzed according to purpose and classified as community property to the extent that they replace longevity retirement income but as separate property to the extent that they compensate for personal suffering and lost earnings); Gay v. Gay, 573 So. 2d 180 (Fla. Dist. Ct. App. 1991) (holding that disability benefits are entirely separate property because they replace future income); Hoffner v. Hoffner, 577 So. 2d 703 (Fla. Dist. Ct. App. 1991) (holding that disability pension replaces future lost income and thus is not a marital asset); Brogdon v. Brogdon, 530 So. 2d 1064 (Fla. Dist. Ct. App. 1988) (holding that disability pension is marital property to the extent it constitutes a retirement benefit and separate property to the extent it compensates for pain, suffering, disability, and disfigurement); Freeman v. Freeman, 468 So. 2d 326 (Fla. Dist. Ct. App. 1985) (holding that disability pension is not a marital asset because it is designed to compensate the employee for lost earning and injuries and, as such, is personal to the employee); Griggs v. Griggs, 686 P.2d 68 (Idaho 1984) (holding that disability pay is not marital property because it is intended to compensate for damages that are personal to the injured spouse); In re Marriage of Miller, 524 N.W.2d 442 (Iowa Ct. App. 1994) (holding that disability payments are not compensation for past services and therefore are not marital property); Chance v. Chance, 694 So.2d 613 (La. Ct. App. 1997) (holding that disability payments from a private policy of insurance are not marital property because they were not intended to as retirement benefits); Hudson v. Hudson, 865 S.W.2d 405 (Mo. Ct. App. 1993) (holding that disability benefits were not marital property because they were intended to compensate husband for lost future earning ability rather than to provide supplemental retirement benefits); Sherman v. Sherman, 740 S.W.2d 203 (Mo. Ct. App. 1987) (holding that disability benefits paid in connection with a private insurance policy are not marital property because they are a substitute for the husband's lost earnings and are not compensation for past employment); Avallone v. Avallone, 646 A.2d 1121 (N.J. Super. Ct. App. Div.1994) (holding that disability pension is marital property only to the extent it represents retirement compensation); Dolan v. Dolan, 583 N.E.2d 908 (N.Y. 1991) (holding that disability pension was marital property only to the extent it compensated for length of service of employment and represented deferred compensation); Gann v. Gann, 649 N.Y.S.2d 154 (Sup. Ct. App. Div. 1996) (holding that husband's disability insurance benefits were not marital property because they had no deferred income component); Fleitz v. Fleitz, 606 N.Y.S.2d 825 (Sup. Ct. App. Div. 1994) (holding that disability insurance benefits paid in connection with a private policy of insurance to disabled husband, a dentist, were not marital property because they were intended to replace lost future earnings and had no separate or distinct annuity or deferred compensation element unrelated to the personal injury disability); Johnson v. Johnson, 450 S.E.2d 923 (N.C. App. 1994) (holding that benefits which compensate for disability are personal to the spouse who receives them and constitute that spouse's separate property, while benefits which are based on the disabled spouse's contribution to a retirement fund are marital property); Fox v. Fox, 592 N.W.2d 541 (N.D. 1999) (holding that disability payments to husband, pathologist, do not constitute marital property because they are intended to replace income the disabled spouse would be earning currently and in the future had the spouse not become disabled); Christmas v. Christmas, 787 P.2d 1267 (Okla. 1990) (holding that disability payments received by spouse after divorce were not marital property since these payments would be a replacement for post-divorce wages); Ciliberti v. Ciliberti, 542 A.2d at 233-34 (holding that "true" disability payments are not marital property because they replace future wages the employee will not be able to earn, but any "retirement component" received in lieu of retirement benefits is marital property); Allard v. Allard, 708 A.2d 554 (R.I. 1998) (holding that disability pension is the separate property of the disabled spouse to the extent it compensates for lost earning capacity but marital property to the extent it represents the disabled spouse's retirement pay earned during the marriage);

After carefully considering the relevant authorities, we conclude that the analytical approach is the better-reasoned approach and the one most consistent with our statutory scheme defining marital and separate property. Pension and retirement benefits compensate individuals who live past retirement age. Such benefits constitute deferred compensation for services rendered and function as a substitute for life savings. Like any joint savings accumulated during the marriage, pension and retirement benefits are subject to distribution as marital property upon divorce. See Christmas, 787 P.2d at 1268. On the other hand, disability benefits do not substitute for savings but instead "protect against the inability of an individual to earn the salary or wages to which he or she was accustomed in the immediate past." Lee R. Russ & Thomas F. Segalla, 1 Couch on Insurance § 1:65 (3d ed. 1996). Generally, therefore, disability benefits replace income which is lost before retirement. See Christmas, 787 P.2d at 1268. Logic dictates that disability benefits and income should be treated in the same manner since disability benefits are income replacement. Since the future income of each spouse is not classified as marital property, disability benefits which replace future income should not be classified as marital property. Like income, disability benefits should be considered when determining alimony and child support obligations.

---

Thompson v. Thompson, 642 A.2d 1160 (R.I. 1994) (holding that a disability pension is not a marital asset because the benefits are intended to compensate the disabled employee spouse for lost earning capacity and are paid in lieu of the earnings which would have been received if the disabled spouse had been able to work); Tinsley v. Tinsley, 483 S.E.2d 198 (S.C. Ct. App. 1997) (holding that a husband's disability benefits are not marital property because they are replacement for income he would be earning currently and would be able to earn in the future had he not become disabled); In re Marriage of Brewer, 976 P.2d 102 (Wash. 1999) (en banc) (holding that disability benefits paid in connection with a private insurance policy acquired during the marriage with community funds are separate property of disabled husband, a dentist, except to the extent the benefits are deferred compensation); In re Marriage of Kollmer, 870 P.2d 978 (Wash. Ct. App. 1994) (holding that disability pay which husband would receive after becoming eligible for retirement pay would be akin to compensation for past services, up to the amount he would have received as retirement pay at that age, but disability pay husband would receive prior to becoming eligible to collect retirement pay could not be viewed as compensation for past services and is not marital property). See generally Grace Ganz Blumberg, Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitues: An Insurance, or Replacement Analysis, 33 U.C.L.A. L. Rev. 1250, 1294 (1986).

In so holding we reject the mechanistic approach which classifies all property as marital unless it is specifically designated separate property by statute. In our view, such an inflexible approach is not appropriate. While the General Assembly has broadly defined marital property, as Dr. Gragg points out, the items enumerated as illustrative of intangible marital property are pension and retirement benefits, property which is in actuality a form of deferred compensation for services rendered. Given the distinctive purposes served by pension or retirement benefits on the one hand, and disability benefits on the other hand, we decline to hold that the General Assembly intended to include disability benefits within the broad definition of marital property.

We emphasize, however, that when the facts of a particular case show that a portion of a spouse's "disability benefits" is actually representative of retirement benefits, the amount received by the disabled spouse in lieu of retirement benefits is marital property subject to distribution. This analytical approach is entirely consistent with the statutory scheme which specifically designates retirement benefits as marital property.

Applying these principles, we conclude that the Court of Appeals correctly held that the disability benefits in this case are not marital property. There is no evidence that Dr. Gragg's disability insurance benefits were intended to provide anything other than replacement for lost income. The record reflects that Dr. Gragg and Ms. Gragg had separate individual retirement accounts. There is no evidence to indicate that the disability benefits were intended to be supplemental retirement funds. In fact, even assuming Dr. Gragg remains disabled, one of the insurance policies will cease paying benefits upon his attainment of age sixty-five. This policy provision seems to contemplate the existence of additional retirement benefits. Although the other policy has no age restriction, benefits will be paid only so long as Dr. Gragg remains unable to work. In sum, the record clearly

-11-

indicates that these disability benefits were intended to provide only income replacement in the event the husband, who was the primary income provider, became unable to work because of disability. The fact that the premiums were paid with marital funds is not controlling. The dispositive factor is that the disability benefits at issue in this appeal operated only as a replacement for lost income.

## CONCLUSION

After due consideration, we conclude that disability benefits from a private disability insurance policy acquired with marital funds during the marriage are not marital property subject to distribution upon divorce because the only purpose served by these benefits is income replacement. Accordingly, we affirm the judgment of the Court of Appeals which upheld the trial court's judgment insofar as it awarded to Ms. Gragg $2,500 per month alimony in futuro until death or remarriage, and we remand this case to the trial court for any further proceedings which may be necessary. Costs of this appeal are assessed equally between the parties.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C. J.
Birch, Holder, Barker, JJ.

-12-