# IN THE SUPREME COURT OF IOWA

No. 19–0969

Submitted October 21, 2021—Filed November 19, 2021

**IN RE THE MARRIAGE OF MATTHEW TAIT MILLER AND KARRI ANN MILLER.**

Upon the Petition of **MATTHEW TAIT MILLER,**

Appellant,

and Concerning **KARRI ANN MILLER,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Appellant seeks further review of the court of appeals opinion affirming the district court's dissolution decree as modified. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AS MODIFIED BY THE COURT OF APPEALS AND REVERSED IN PART.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Heather A. Prendergast (argued) of Roberts, Stevens & Prendergast, PLLC, Waterloo, for appellant.

Andrew B. Howie (argued) of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

**CHRISTENSEN, Chief Justice.**

When things are going well, married folks pay little attention to whose stuff is whose or how it ended up in the marital pot. But when things go south, there is an intense laser focused on the marital pot. Under Iowa dissolution law, all marital property must be equitably divided unless inherited or gifted. Here, Matthew (Matt) believes he should not have to share his future disability benefit because it replaces income he can no longer earn and, as such, is not marital property. Karri disagrees and points towards the "inherited or gifted" exception. She urges us to award her part of Matt's future disability benefit because it is neither inherited nor gifted. Is Matt's future disability benefit income or property? We determine it is a replacement for income and not part of the marital pot to be divided upon dissolution. Therefore, we vacate the court of appeals in part and use our discretion to let the rest of the court of appeals opinion stand on the remaining issues appealed from the district court.

## I. Background Facts and Proceedings.

Matt and Karri Ann Miller met in November 2009 and subsequently married on April 24, 2010. Matt petitioned for divorce about seven years later on August 7, 2017. Matt was forty-two years old at the time of the trial and Karri was thirty-seven years old. The couple has no children. Matt obtained two degrees from the University of Northern Iowa: a bachelor's degree before the marriage in 1999 and a master's degree in May of 2017 after the marriage. Karri earned two bachelor's degrees from Mount Mercy College in 2003 before the marriage.

Karri worked for the State of Iowa Department of Human Services from 2003 to 2011. From 2011 to 2017, she stayed at home and worked several different jobs. Since 2017, she has been a work counselor at Hawkeye Community College helping high school students with disabilities explore career opportunities.

Matt joined the Army National Guard in November 1993. He was deployed three times before the marriage between 2000 and 2007, serving in Saudi Arabia, Egypt, and Iraq. After marriage, he was deployed a fourth time in Afghanistan between 2010 and 2011. During his deployment in Iraq between 2006 and 2007, he provided security for convoys entering western Iraq from Syria. These responsibilities included locating improvised explosive devices (IEDs) on convoy routes. Matt was exposed to many IEDs, several of which exploded, and he witnessed several injuries or deaths among fellow soldiers, coalition partners, and civilians.

Matt obtained other employment in conjunction with his military service. He was employed at Veridian Credit Union from some point as an undergraduate student at the University of Northern Iowa until late 2007 or early 2008. In March 2008, Matt transitioned to become a police officer in Waterloo. He remained in various roles with the Waterloo Police Department until September 2015. Since 2017, Matt has been a Program Director for Military and Veteran Student Services at the University of Iowa.

After Matt's return from Iraq before the marriage, he began to experience anxiety, lack of patience, bouts of depression, and trouble staying in large

crowds. In June 2014, his family doctor suggested that he participate in an assessment for PTSD. Five months later, Matt was formally diagnosed with PTSD and given a disability rating of 70 by the Veteran's Administration (VA). Matt retired from the Waterloo Police Department due to his PTSD in 2015.

Matt receives two disability payments related to his PTSD diagnosis. The first disability payment is a VA disability payment of $1,364.48 per month. The second disability payment is from the Municipal Fire & Police Retirement System of Iowa.[1] This second benefit is governed by Iowa Code chapter 411. Chapter 411 creates "a retirement system [for fire fighters or police officers] which will provide for the payment of pensions to retired members and members incurring disabilities." Iowa Code § 411.1A(1) (2017). Matt qualified for an ordinary disability retirement benefit (chapter 411 ordinary disability benefit) due to his PTSD diagnosis. *Id.* § 411.6(4). *See generally* Municipal Fire & Police Retirement System of Iowa, *Retirement Resources Disability Benefits: Eligibility Requirements and Applying for Disability Benefits* 3 (n.d.), http://www.mfprsi.org/site_media/ publications/disability_retirement_brochure_1.pdf [https://perma.cc/8RQW-EJDA] (describing the differences between ordinary and accidental disability retirement benefits). Matt receives a chapter 411 ordinary disability benefit equal to 50% of his average final compensation based on his eight years of service with the Waterloo Police Department. Iowa Code § 411.6(4)(*b*). For Matt, this disability

---

[1]The parties' briefs refer to these payments as a disability pension. This is what chapter 411 calls an "ordinary disability retirement benefit." Iowa Code § 411.6(3) (2017).

payment amounts to $2,651 per month but is subject to an earnings test. *Id.* § 411.6(7)(*a*)(1).

The district court entered a dissolution decree on October 9, 2018. The district court determined several issues regarding marital property. Regarding Matt's chapter 411 ordinary disability benefit, the district court determined it was marital property subject to division pursuant to the *Benson* formula.[2] The *Benson* division of Matt's chapter 411 ordinary disability benefit came out to be approximately $828.44 per month to Karri. Matt would have retained the rest of the benefits.

Matt and Karri filed timely appeals arguing various provisions of the dissolution decree were incorrect or inequitable, including whether future payments from a chapter 411 ordinary disability benefit are marital property. We transferred the case to the court of appeals. The court of appeals affirmed the district courts determination that a chapter 411 ordinary disability benefit is marital property along with most aspects of the dissolution decree.[3] Matt filed a petition for further review and Karri resisted. We granted the petition.

On further review, we reverse the district court's ruling that chapter 411 ordinary disability benefits are marital property and we vacate the part of the court of appeals decision affirming the same. In our view, chapter 411 ordinary

---

[2]The Benson formula is a method used to divide a defined benefit plan for the purposes of marital property settlement. *See In re Marriage of Benson*, 545 N.W.2d 252, 254–55 (Iowa 1996) (en banc). The service factor percentage method divides the pension according to a percentage multiplied by a factor based on the member's service during the marriage and the member's total service. *Id.* (providing the formula).

[3]The court of appeals modified the amount of Matt's Roth IRA to be awarded to Karri at $4,301.02.

disability benefits replace income that an individual would have earned if not for an injury causing the disability and should be treated as income and not property. However, we use our discretion to let the court of appeals decision stand in all other respects including the denial of survivor benefits for the chapter 411 ordinary disability benefit and Matt's National Guard retirement pension; the division of Matt's National Guard retirement pension; the award of $20,000 from Matt's TIAA-CREF account to Karri; the modification of Matt's Roth IRA to be awarded to Karri; and ordering the loan by Karri's mother to be repaid with the proceeds from the sale of their home.

**II. Standard of Review.**

In an equity action, such as dissolution of marriage, our review is de novo. *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020) (citing Iowa R. App. P. 6.907). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon [this court]." *Id.* (alteration in original) (quoting *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015)).

**III. Analysis.**

**A. Future Payments from a Chapter 411 Ordinary Disability Benefit are Separate Property.**

1. *Framework for determining marital property in Iowa.* Iowa is an equitable distribution jurisdiction. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). "In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *Id.* (alteration in original) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 702

(Iowa 2007)). Iowa Code section 598.21(5) provides that "[t]he court shall divide *all* property, except inherited property or gifts received or expected by one party, equitably between the parties after considering" certain factors. (Emphasis added.) Inherited and gifted property can be subject to division if the court finds "that refusal to divide the property is inequitable to the other party or to the children of the marriage." *Id.* § 598.21(6). "An equitable distribution of marital property, based upon the factors in 598.21(5), does not require an equal division of assets." *McDermott,* 827 N.W.2d at 682 (quoting *In re Marriage of Kimbro,* 826 N.W.2d 696, 703 (Iowa 2013)).

The legislature's choice of the word "all" creates an expansive marital pot. *In re Marriage of Schriner,* 695 N.W.2d 493, 496 (Iowa 2005). Beyond the specific exclusion of gifts and inherited property, "the statute makes no effort to include or exclude property from the divisible estate." *Id.* For example, the statute also encompasses property owned by a party before the marriage. *Id.* "[T]he circumstances and underlying nature of the included property are generally considered as factors that impact the . . . task of determining an equitable division, along with all other relevant factors" listed in section 598.21(5). *Id.* However, future earnings are not considered property subject to division at the time of the dissolution. *Id.* at 498–99.

2. *Mechanistic and analytical approaches to disability pensions.* Historically, we have treated retirement pensions as marital property. *See, e.g., In re Marriage of Crosby,* 699 N.W.2d 255, 258 (Iowa 2005); *In re Marriage of Branstetter,* 508 N.W.2d 638, 640 (Iowa 1993); *In re Marriage of Howell,* 434

N.W.2d 629, 631 (Iowa 1989); *In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982). Pensions are marital property because they "are deferred compensation; rights to the pension benefits are derived from the employment contract and a contractual right is a chose in action—a form of property." *Bevers*, 326 N.W.2d at 900. States have uniformly held that retirement pensions are marital property subject to equitable division. *See generally* 2 John Tingley & Nicholas B. Svalina, *Marital Property Law* § 48:2 (Rev. 2d ed. 2013).

Disability pensions or benefits, on the other hand, have been difficult to categorize as marital or separate property due to the multiple forms they may take and their different purposes. *Gragg v. Gragg*, 12 S.W.3d 412, 416 (Tenn. 2000); *see Ciliberti v. Ciliberti*, 542 A.2d 580, 582 (Pa. Super. Ct. 1988). States have classified disability pensions or benefits either through the mechanistic approach or the analytical approach. *Gragg*, 12 S.W.3d at 416–17. We have previously acknowledged that equitable distribution jurisdictions have utilized these approaches to determine whether property is a marital asset. *Schriner*, 695 N.W.2d at 497–99 (explaining the approaches as applied to workers' compensation benefits); *In re Marriage of McNerney*, 417 N.W.2d 205, 207–08 (Iowa 1987) (explaining the approaches as applied to personal injury settlements).

The mechanistic approach focuses on "whether disability benefits have been specifically excepted from the definition of marital property by statute." *Gragg*, 12 S.W.3d at 416; *cf. McNerney*, 417 N.W.2d at 207 (explaining the mechanistic approach in the context of personal injury awards). Essentially, the

disability benefits will be considered marital property if the disability benefits accrued during the marriage and there is no comparable exception in the state's equitable division statute.[4] This approach generally does not consider whether the disability benefits should be properly classified as "income." *See In re Marriage of Simon*, 856 P.2d 47, 51 (Colo. App. 1993) (acknowledging workers' compensation benefits and veterans disability pensions are replacements for future lost earnings, but concluding a private disability insurance policy purchased with marital funds during marriage was marital property).

The analytical approach focuses on the "nature and purpose of the specific disability benefits at issue" rather than when the disability benefits accrued and exceptions in the equitable division statute. *Gragg*, 12 S.W.3d at 417; *cf. Schriner*, 695 N.W.2d at 497 (explaining the analytical approach in the context of workers' compensation benefits). A majority of states have utilized the analytical approach to determine whether disability benefits are marital property. *Gragg*, 12 S.W.3d at 416; *Conrad v. Conrad*, 612 S.E.2d 772, 776 (W. Va. 2005) (per curiam). "[B]enefits which actually compensate for disability are not classified as marital property because such benefits are personal to the spouse who receives them and compensate for loss of good health and replace lost earning capacity." *Gragg*, 12 S.W.3d at 416; *see Conrad*, 612 S.E.2d at 776.

---

[4]*See, e.g.*, *Mason v. Mason*, 895 S.W.2d 513, 516–18 (Ark. 1995) (determining a private disability pension made with contributions during the marriage did not fall under a personal injury exception in the Arkansas equitable division statute); *In re Marriage of Simon*, 856 P.2d 47, 51 (Colo. App. 1993) (determining a private disability insurance policy acquired with marital funds during the marriage was not excluded from the state's equitable division statute); *In re Marriage of Smith*, 405 N.E.2d 884, 887–90 (Ill. App. Ct. 1980) (same).

However, if the benefit contains a retirement and disability component, courts have separately classified the retirement component as marital property subject to division and the disability component as separate property not subject to division. *Conrad*, 612 S.E.2d at 776 (collecting cases); *see Allard v. Allard*, 708 A.2d 554, 557 (R.I. 1998); *Coffman v. Coffman*, 215 S.W.3d 309, 312–13 (Mo. Ct. App. 2007).[5]

The analytical approach has produced a variety of results. Some courts have held outright that disability benefits are income replacement and should not be classified as marital property. *Gragg*, 12 S.W.3d at 418; *see also In re Marriage of Elder & Mahlum*, 462 P.3d 209, 214–15 (Mont. 2020). Others have opted for a "case-by-case basis" to determine whether certain types of disability benefits are separate or marital property. *Metz v. Metz*, 61 P.3d 383, 388 (Wyo. 2003) (determining a private disability insurance policy purchased by family funds was marital property); *see Conrad*, 612 S.E.2d at 777 (determining that a private disability insurance plan bought with marital funds over thirty years was marital property).

3. *Chapter 411 ordinary disability benefits are income and, as such, are not subject to property division at the time of dissolution.* In *In re Marriage of McNerney*, we canvassed the mechanistic and analytical approaches as to

---

[5]We previously indicated in *In re Marriage of Crosby* that "if disability benefits only partially supplant retirement benefits, they are equivalent to retirement benefits and are therefore divisible." 699 N.W.2d at 259 (citing *West v. West*, 475 N.Y.S.2d 493, 494–95 (App. Div. 1984)). This statement has been critiqued by one commentator suggesting "[t]his rule of law is not followed in any other state and is not supported by" *West v. West*. 2 Brett R. Turner, *Equitable Distribution of Property* § 6:52, at 136 (3d ed. Supp. 2013).

whether a settlement for a personal injury that occurred to one spouse during the marriage was marital or separate property. 417 N.W.2d at 207–08. We adopted the mechanistic approach because "it is more just to allow a trial court the flexibility to divide the property equitably on a case-by-case basis." *Id.* at 208. We upheld the trial court's division of the personal injury settlement because there was no evidence it "was computed only on a basis of [the spouse's] physical injuries and continuing pain." *Id.*

We engaged in a similar analysis of the mechanistic and analytical approaches as applied to workers' compensation benefits in *In re Marriage of Schriner*. 695 N.W.2d at 496–98. *Schriner* agreed with "the overall approach adopted in *McNerney*—that is, limiting property excluded from the divisible estate to the specific exclusions established by the statute and relying upon the equitable powers of the court to reach an overall equitable distribution scheme of all of the property." *Id.* at 497–98. Consistent with *McNerney*, workers' compensation benefits "received up to the time of the dissolution are property subject to an equitable division to the extent they have been retained and not spent." *Id.* at 499.

However, *Schriner* explained "workers' compensation benefits awarded after a dissolution are considered to be income for purposes of determining child support." *Id.* at 498 (citing *In re Marriage of Swan*, 526 N.W.2d 320, 325 (Iowa 1995)). The classification of workers' compensation benefits awarded after a dissolution as income was appropriate "because the benefits essentially replace

income that would otherwise have been earned had the worker not been injured."
*Id.*

As Matt notes, *Schriner* compared future earnings of workers' compensation benefits to veterans' disability pension. *Id.* at 499 (citing *Howell*, 434 N.W.2d at 632). In *In re Marriage of Howell*, we distinguished a veterans' disability payment from a military retirement pension for two reasons. 434 N.W.2d at 632–33. First, "[a] disability payment to a retired service[ ]member injured in the line of duty cannot be considered compensation for past services rendered." *Id.* at 632–33. Second, a federal statute exempted veterans' disability benefits from all claims, besides claims by the United States, and did not allow these disability benefits to be divided or assigned. *Id.* at 633 (citing 38 U.S.C. § 3101 (1988)). Based on the specific purpose of veterans' disability payments and the underlying federal statutory scheme, we held that veterans' disability benefits could not be considered marital property under our equitable division statute. *Id.* at 632–33 (citing Iowa Code § 598.21(1) (1987)). *Howell*'s reference to disability payments as distinct from compensation for past services rendered and *Schriner*'s adoption of the *Howell* reasoning embrace an analytical approach to disability benefits. *Compare id.*, *with Gragg*, 12 S.W.3d at 416.

We think the rationale in *Howell* and *Schriner* applies to future payments of Matt's chapter 411 ordinary disability benefit. We previously described future payments of a chapter 411 disability benefit as income in *In re Marriage of*

*DeNuys.* 543 N.W.2d 894, 896–97 (Iowa 1996).[6] An examination of section 411.6(3) describes the purpose of an ordinary disability retirement benefit is to replace lost income, as suggested by *DeNuys.* Chapter 411 ordinary disability benefits are only available to members who are "mentally or physically incapacitated for further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired." Iowa Code § 411.6(3). However, if the member is denied this benefit they are "entitled to be restored to active service in the same position held immediately prior to the application for disability benefits." *Id.*; *see also id.* § 411.6(7) ("For a disability beneficiary who has not attained the age of fifty-five and whose entitlement to a disability retirement commenced on or after July 1, 2000, the medical board may . . . suggest appropriate medical treatment or rehabilitation if . . . the recommended treatment or rehabilitation would likely restore the disability beneficiary to duty."). This entitlement to return to service indicates "the benefits essentially replace income that would otherwise have been earned had the worker not been injured." *Schriner,* 695 N.W.2d at 498.

Iowa Code section 411.6 also clearly distinguishes between each of the different types of "retirement benefits." *See id.* § 411.6(1) (service retirement benefit), (3) (ordinary disability retirement benefit), (5) (accidental disability benefit). The calculation formulas and eligibility requirements between an ordinary service retirement and a disability retirement benefit are also

---

[6]The *DeNuys* opinion and briefs are unclear if the disability pension was an ordinary disability retirement benefit or an accidental disability benefit under section 411.6.

significantly different. *See id.* § 411.6(2) (service retirement benefit calculation), (4) (ordinary disability retirement benefit calculation). These differences "more closely resemble a replacement or compensation for lost service income that the member otherwise would have earned in the future but for the disability." *Elder & Mahlum*, 462 P.3d at 214 (making the same observations in analyzing a similar Montana statute for sheriff retirement system benefits).

We conclude that future payments from a chapter 411 ordinary disability benefit are income and not property and thus not subject to equitable division because they replace income that an individual would have earned if not for an injury causing the disability. However, as income, these benefits may be considered in determining child and spousal support as described in *Howell.* 434 N.W.2d at 633. In this case, neither party requested alimony nor are there any children at issue.

Karri relies on our decision in *In re Marriage of Branstetter*, but we believe the case is inapposite. *Branstetter* first addressed the divisibility of a chapter 411 retirement benefit. 508 N.W.2d at 640. In *Branstetter*, we determined a chapter 411 retirement benefit was divisible marital property despite an exemption provision in Iowa Code section 411.13 preventing chapter 411 funds from "execution, garnishment, attachment, or any other process whatsoever." *Branstetter*, 508 N.W.2d at 636–40 (quoting Iowa Code § 411.13 (1991)). Section 411.13's exemption provision "in the context of a marital relationship . . . has very limited application . . . because a court 'process' is not the source of the claimant's rights against the pension, but rather the marital relationship itself."

*Id.* at 640. Several previous dissolution opinions from Iowa and other jurisdictions were in agreement that exemption statutes did not apply to spousal support or property division awards. *Id.* at 640–42 (collecting cases). We noted while "the award of pension rights in this case was denominated as a 'property' division, it is a lot like spousal support, and we believe the same rules should be applicable to both." *Id.* at 642. However, we refrained from categorizing the division of a chapter 411 retirement benefit as spousal support because "it is sometimes better to classify the division of the pension as a property division rather than spousal support so the allowance is not lost on death or remarriage." *Id.* (citing *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn. 1983) (en banc)). *Branstetter* is thus not on point, because it involved a chapter 411 retirement, as opposed to a disability benefit.

We later held chapter 411 disability benefits are subject to a mandatory income withholding order for child support despite section 411.13 exemption language. *DeNuys*, 543 N.W.2d at 899. We recognized chapter 411 disability "benefits were not intended solely to benefit the disabled employee, but were intended to benefit the employee's spouse and children as well." *Id.* at 898. Based on this intention, *DeNuys* utilized *Branstetter*'s underlying rationale as support to conclude exemption statutes had a " 'very limited application' in divorce cases." *Id.* (quoting *Branstetter*, 508 N.W.2d at 640). The difference between *DeNuys*'s disability pension being "earmarked" as income for child support purposes and *Branstetter*'s retirement pension being "denominated" as part of

property division was "insignificant in determining the legal validity of the withholding order in the present case." *Id.*

Karri's brief also argued the holding in *DeNuys* was that chapter 411 disability benefits are marital property subject to division at dissolution.[7] We disagree. The holding in *DeNuys* was "disability benefits are subject to . . . mandatory income withholding orders for dependent child support despite the general exemption language found in section 411.13." *Id.* at 899. Implicit in our holding was that a chapter 411 disability benefit is income. *Id.* at 896–97.

Matt argued that if we hold a chapter 411 ordinary disability benefit is marital property, then the court of appeals holding in *In re Marriage of O'Conner*, 584 N.W.2d 575, 576 (Iowa Ct. App. 1998), should apply. Because we hold the disability pension in question is not a marital asset, there is no need to make a division. We nonetheless address Matt's argument to dispel any misunderstandings about the effect of section 411.13 on the characterization of

---

[7]Citing *Branstetter*, *DeNuys* incorrectly stated "section 411.13 did not prevent the district court [in *Branstetter*] from dividing the husband's *chapter 411 disability pension* as a part of the property settlement in the dissolution decree." *DeNuys*, 543 N.W.2d at 898 (emphasis added) (citing *Branstetter*, 508 N.W.2d at 642). As mentioned previously, *Branstetter* involved the possible future division of a chapter 411 retirement benefit. *See Branstetter*, 508 N.W.2d at 639 (noting the husband "currently is a fire inspector"), 640 (addressing whether the exemption from execution in Iowa Code section 411.13 changed the general rule that "contributions made during marriage to a retirement or pension fund, and absolutely subject to withdrawal by the contributing spouse, are subject to division by the divorce court, or at least properly includable in the total assets subject to award or division" (quoting Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses*, 94 A.L.R.3d 176, 232 (1979))). Additionally, the only issue in *DeNuys* was whether the chapter 411 disability pension was subject to child support withholding; division of marital property was not at issue. We nonetheless stated in passing that the parties did not dispute that a chapter 411 disability pension was also "a marital asset subject to division." *Id.* at 897 (citing *Branstetter*, 508 N.W.2d at 640). As such, *DeNuys*'s gratuitous discussion of chapter 411 disability benefits as being marital property subject to division through *Branstetter* was incorrect.

chapter 411 benefits for purposes of dissolution proceedings. In 1996, the Iowa Legislature amended section 411.13 to read that chapter 411 benefits "are not subject to execution, garnishment, attachment, or any other process whatsoever, and are unassignable *except for the purposes of enforcing child, spousal, or medical support obligations or marital property orders.*" 1996 Iowa Acts ch. 1187, § 104 (codified at Iowa Code § 411.13 (1997)). In *O'Conner*, the court of appeals determined the inclusion of "marital property orders" in section 411.13 in 1996 required "chapter 411 pension benefits [to be] subject to division in marital property orders." 584 N.W.2d at 576.[8] The *O'Conner* court then determined division of a chapter 411 accidental disability benefit was unequitable because it was to replace income that would have been earned if not for the injury. *Id.* at 577 (citing *Howell,* 434 N.W.2d at 632).

In light of our holding today, we disagree with the statutory analysis of section 411.13 in *O'Conner.* The 1996 amendments to section 411.13 do not explicitly classify certain pensions as marital property or separate property. The legislature's inclusion that marital property orders can execute, garnish, or attach to all chapter 411 benefits does not deem those benefits as marital property. Therefore, the court of appeals in *O'Conner* was incorrect to classify

---

[8]The court of appeals in *O'Conner* noted the differences between *Howell*'s conclusion that military disability payments were not marital property and *DeNuys*'s recognition of chapter 411 disability pensions as marital property subject to division, *see O'Conner,* 584 N.W.2d at 576 n.2, but then attempted to reconcile the differences by concluding the legislative amendment to section 411.13 erased any questions about whether a chapter 411 benefit was marital property subject to division. *Id.* at 576.

chapter 411 disability benefits as marital property based on the language of section 411.13.

### IV. Conclusion.

For these reasons, we vacate in part the decision of the court of appeals determining future payments of Matt's chapter 411 ordinary disability benefit are part of the marital pot. We use our discretion to let stand all other parts of the court of appeals opinion.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AS MODIFIED BY THE COURT OF APPEALS AND REVERSED IN PART.**