IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 22, 2009 Session

**BRENDA BREWER v. KENNY BREWER, SR.**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002163-05    Robert L. Childers, Judge**

_____

**No. W2008-02041-COA-R3-CV - Filed September 3, 2009**

_____

This is a divorce case. On appeal, Husband argues that certain settlement monies, which he claims Wife failed to disclose, should be considered marital property subject to equitable division. Such monies include Wife's personal injury settlement, Wife's payment for past SSI benefits, and Wife's car insurance settlement proceeds. Husband also contends that Wife's share of the marital home should be reduced based on the discovery of these additional assets. Finally, Husband argues that he should not have been required to pay rehabilitative alimony and alimony in futuro to Wife. We affirm.


**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Scottie O. Wilkes, Memphis, TN, for Appellant

No brief filed on behalf of Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Brenda Brewer ("Wife") and Kenny Brewer, Sr. ("Husband") were married in April of 1988, and separated in April of 2005. A divorce trial was held on June 30, 2008. Wife was granted a divorce from Husband on the ground of inappropriate marital conduct in an August 8, 2008 "Final Decree of Divorce" entered by the Shelby County, Tennessee, Circuit Court. Pursuant to the final decree, Wife was awarded ninety percent (90%) of the equity in the parties' marital home (a condominium) and Husband was awarded ten percent (10%) of the net equity in such home.[1] The trial court further divided the marital debts and personal property, and ordered Husband to pay Wife $600 per month as rehabilitative alimony for two years, and thereafter to pay Wife $400 per month as alimony in futuro.

Husband appeals from the final decree, arguing that the trial court failed to classify certain property as marital property, that it failed to equitably divide the marital assets and debts, and that its award of alimony to Wife was error.

### II. ISSUES PRESENTED

Husband has timely filed his notice of appeal and presents the following issues for review, summarized as follows:[2]

1.  Whether the proceeds of Wife's personal injury settlement and social security benefits should have been considered marital property;[3]

2.  Whether the court equitably divided the marital assets and debts; and

3.  Whether Husband should have been ordered to pay rehabilitative alimony and alimony in futuro.

For the following reasons, we affirm the trial court's division of the marital estate as well as its award of alimony to Wife.

---

[1] No dollar amount was specified.

[2] Wife failed to file a brief with this Court. An "Order Submitting Appeal for Decision" was entered by this Court on May 26, 2009.

[3] In its "Final Decree of Divorce," the trial court found the proceeds from Wife's personal injury settlement were her separate property; however, the decree did not address the supplemental security income benefits.

## III. STANDARD OF REVIEW

We must give great weight to the trial court's decisions in dividing marital assets, and "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" ***Keyt v. Keyt***, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). Both the classification of property as marital property or separate property, as well as the division of marital property, are questions of fact. ***Fickle v. Fickle***, --- S.W.3d ----, 2008 WL 3843846, at *3 (Tenn. Ct. App. Aug. 19, 2008) *perm. app. denied* (Feb. 19, 2009). Our review of the trial court's findings of fact is *de novo*, with a presumption of correctness unless the preponderance of the evidence is otherwise. ***Id.*** (citing Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

"Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court." ***Keyt***, 244 S.W.3d at 327 (citing *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991)). "Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings." ***Id.*** (citing *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007)).

## IV. DISCUSSION

### A. *Classification of Property*

On appeal, Husband argues that the trial court erred in failing to classify certain property as marital property subject to equitable division. Specifically, Husband contends that three payments Wife allegedly received should have been classified as marital property: (1) an approximately $12,000.00 lump sum payment Wife received for Supplemental Security Income ("SSI") benefits; (2) an approximately $10,000.00 insurance settlement for the loss of Wife's vehicle;[4] and (3) an $18,624.85 payment for the settlement of Wife's personal injury lawsuit.

---

[4] Neither the record, nor Husband's brief states the amount of Wife's alleged insurance settlement for the loss of her vehicle. The $10,000 figure was stated only by Husband's counsel at oral argument before this Court.

Tennessee is a "dual property" state, as our divorce statutes distinguish between marital and separate property. ***See Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The first step a trial court must take in dividing a marital estate is to identify all of the parties' property interests. ***Owens v. Owens***, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007) (citing 19 W. Walton Garrett, *Tennessee Practice: Tennessee Divorce, Alimony and Child Custody* § 15:2, at 321 (rev. ed. 2004)). Next, the trial court must classify the identified property as either marital or separate. ***Id.*** (citing *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003); *Conley v. Conley*, 181 S.W.3d 692, 700 (Tenn. Ct. App. 2005); *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998)). "This classification is an important threshold matter because courts do not have the authority to make a distribution of separate property." ***Summer v. Summer***, No. E2007-01003-COA-R3-CV, 2008 WL 990454, at *2 (Tenn. Ct. App. Apr. 10, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008) (citing *Keyt*, 244 S.W.3d at 328; *Flannary*, 121 S.W.3d at 650).

Tennessee Code Annotated section 36-4-121 governs the classification of property as marital or separate, and defines "marital property" to include:

> (1)(A) . . . all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .
>
> (C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.
>
> (D) . . . "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

Tennessee Code Annotated section 36-4-121 further defines "separate property" as

> (2)(A) All real and personal property owned by a spouse before marriage . . . ;
>
> (B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage
except when characterized as marital property under subdivision (b)(1)[.]

"A divorcing spouse who seeks to include in the marital estate property that the other spouse claims is separate property has the burden of proving that the disputed property satisfies the definition of marital property." ***Herbison v. Herbison***, No. M2008-00658-COA-R3-CV, 2009 WL 1634914, at *4 (Tenn. Ct. App. June 10, 2009) (citing *Keyt v. Keyt,* 244 S.W.3d 321, 328 (Tenn.2007)).

### 1. Supplemental Security Income

Husband alleges that Wife failed to disclose to the trial court settlements totaling approximately $40,000.00, including an alleged $12,000.00 lump sum payment for SSI benefits. However, contrary to Husband's allegation of non-disclosure, the "Statement of Evidence" demonstrates that Wife testified at the parties' divorce trial that "[s]he stopped working in 1997 and started receiving SSI effective in 2004[, and that s]he received a lump sum of approximately $12,000.00 in 2006 for benefits from 2004."

On appeal, Husband contends that part of the "approximately $12,000.00 lump sum payment for SSI disability . . . . represented los[t] income during the parties['] marriage when [Wife] was unable to contribute to the household." Thus, he argues that "a portion of the lump sum payment" should have been considered marital property, pursuant to Tennessee Code Annotated section 36-4-121(1)(C), which provides in part:

(C) "Marital property" includes recovery in . . . social security disability actions, and
other similar actions for the following: wages lost during the marriage . . . .

The question of whether past SSI benefits constitute marital property appears to be an issue of first impression in this state. Although Husband uses the terms "SSI" and "social security disability" interchangeably, we find that the two are not synonymous. Our Supreme Court has recognized "a crucial distinction" between SSI and social security disability: "SSI payments are a form of public assistance and have nothing to do with earnings a person may have had[,]" whereas social security disability benefits are "keyed to how much [a] person has paid into the Social Security System over time." ***Tenn. Dep't of Human Servs. ex rel. Young v. Young***, 802 S.W.2d 594, 597 (Tenn. 1990) (holding that SSI benefits, unlike social security benefits, are for the benefit of the individual recipient and are not subject to garnishment in order to satisfy the recipient's child support obligation). "[D]isability benefits are income replacement" ***Gragg v. Gragg***, 12 S.W.3d 412, 418 (Tenn. 2000), designed to "'protect against the inability of an individual to earn the salary or wages to which he or she was accustomed in the immediate past.'" ***Id.*** (stating that private disability benefits which replace *future* income are not marital property) (quoting Lee R. Russ & Thomas F. Segalla, 1 *Couch on Insurance* § 1:65 (3d ed. 1996)). However, "SSI benefits [are] not based upon remuneration for employment[.]" ***Young***, 802 S.W.2d at 597.

"'Adhering to general principles of statutory construction, we read statutory language according to its plain meaning, and if it is unambiguous, we cannot force an interpretation that would alter the statute's application.'" ***Friedmann v. Corr. Corp. of America***, No. M2008-01998-COA-R3-CV, 2009 WL 2407755, at \*9 (Tenn. Ct. App. Aug. 5, 2009) (quoting ***In re Estate of Nelson***, No. W2006-00030-COA-R3-CV, 2007 WL 851265 (Tenn. Ct. App. Mar. 22, 2007)). Based on the distinction between SSI and social security disability benefits, we cannot find that past SSI benefits are included within the phrase "recovery in . . . social security disability actions." Moreover, even if we were to find that recovery of SSI benefits is a "similar action," as contemplated by the statute, because SSI benefits are not remuneration for employment, we cannot find that past SSI benefits are "recovery . . . for . . . wages lost during the marriage." **Tenn. Code Ann. § 36-4-121(1)(C)**. Accordingly, Wife's SSI payment is her separate property.

## 2. Insurance Settlement

Next, Husband argues that Wife failed to disclose to the trial court "an insurance settlement [Wife received] for a vehicle purchased during the marriage[,]"and that such settlement should have been considered marital property. The "Statement of Evidence," regarding the alleged settlement reveals only that Husband testified that "Wife did not tell Husband that she received money from the insurance company for the loss." Husband's brief does not explain, nor does the record reveal, when, or for which vehicle, the settlement was made, when such vehicle was purchased or by whom, or even the amount of the alleged settlement.

According to the "Statement of Evidence," Wife testified at the parties' divorce trial that she "has one vehicle" and that "Husband has a Ford Aerostar van, a 740 BMW and a Lincoln Town Car." She also stated that Husband used a portion of her $380,000.00 settlement proceeds from a wrongful death lawsuit to purchase "a Ford Escort, the Lincoln Continental, the Ford Aerostar, and a Ford Mustang[.]" Finally, she testified that "she bought a new car, a 1998 BMW 528i" as well as an $11,000.00 car for her son with a portion of the wrongful death settlement monies.[5]

Tennessee Code Annotated section 36-4-121 classifies as "marital property" "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" From the record, we cannot determine whether the vehicle in question was purchased during the parties' marriage, or if it was purchased before the marriage, if it was converted into marital property.[6] As such, Husband has failed to demonstrate that the insurance proceeds are marital property subject to equitable distribution. ***See Herbison***, 2009 WL 1634914, at \*4.

---

[5] Husband's brief also alleges that the parties purchased a 1992 Saturn SL.

[6] We note that the "Statement of the Evidence" states that Husband testified that, in 1999, Wife's son totaled a car purchased for him that same year. However, it is unclear whether this is the vehicle for which the settlement was paid.

### 3. Personal Injury Settlement

As we noted above, Tennessee Code Annotated section 36-4-121 includes within the definition of "marital property," "recovery in personal injury . . . for . . . wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property[.]" On appeal, Husband concedes that Wife claimed no loss of income in her personal injury suit, as she was not employed at the time of the accident in 1999; however, he argues that he is entitled to a share of her settlement monies because he "made a substantial contribution to [Wife's] well being during this time."

The "Statement of Evidence" reveals that Wife testified at trial regarding receipt of approximately $18,000.00 in 2005 as settlement for her personal injury lawsuit. Although she testified that she "did not tell Husband about this settlement[,]" Husband acknowledges in his brief that he "discovered the settlement after receiving a cancellation letter[, dated August 23, 2005,] from the insurance company." Additionally, in his "Local Rule 14(D) Memorandum" dated June 27, 2008, Husband listed the personal injury settlement as a marital asset. Moreover, the trial court specifically addressed the settlement, and found it to be Wife's separate property. Thus, we find that Wife did not "fail[] to reveal" the settlement before the trial court, as suggested by Husband.

We reject Husband's contention that Tennessee Code Annotated section 36-4-121 contemplates the transmutation of one spouse's personal injury award into marital property based on the lost income of the non-suing spouse.[7] Furthermore, the settlement money otherwise fails to qualify as marital property. At trial, Wife testified that she used the $18,000.00 settlement to pay "her sisters back for money they had loaned her and [to get] her car windows repaired" after Husband allegedly broke all of them out. Thus, even if Husband had showed that the money was transmuted into marital property through a lost wages theory, he has failed to show that the settlement money was "owned by either or both spouses as of the date of filing of a complaint for divorce[.]" **Tenn. Code Ann. § 36-4-121(1)(A)**.

### B.   *Division of Marital Property*

Next, Husband argues that the trial court erred in dividing the parties' marital estate. Essentially, Husband contends that Wife's share of the marital home should have been reduced "because of the settlements she received and failed to reveal." Tennessee Code Annotated section 36-4-121(c) provides a list of factors courts should consider when making an equitable division. Among the factors listed is "[t]he value of the separate property of each party." **Tenn. Code Ann. § 36-4-121(c)(6)**. Thus, even if the settlement monies were Wife's separate property, such additional assets could affect the division of the parties' marital property.

---

[7] Husband was not a party to Wife's personal injury suit.

Despite Husband's contention that they were not known to the trial court, the "Statement of Evidence" demonstrates that the trial court was aware, when making its division of assets, that Wife had received approximately $12,000.00 in SSI benefits and approximately $18,000.00 for her personal injury lawsuit, and that she had "received money" for the loss of a vehicle. Thus, we must presume that the trial court considered this evidence, and that its division was correct unless the preponderance of the evidence is otherwise.

As we stated above, Husband has failed to produce any evidence, other than his own brief, regarding the amount of Wife's insurance settlement. Therefore, this unknown amount shall not affect Wife's share of the marital home.

The evidence regarding the parties' marital home is both scarce and contradictory. The parties' marital home was purchased in 1993 for $56,950.00. According to the "Statement of Evidence," Wife testified that the down payment on the home was paid for with money she received when she settled a wrongful death lawsuit for $495,000.00. From our review of the U.S. Department of Housing and Urban Development "Settlement Statement," it appears that the parties made a down payment of $100.00 towards the home. Wife testified that "[f]or four or five years she and Husband would take turns paying the house note." However, Wife then testified that, in December 2007, when she received $380,000 as settlement for her wrongful death lawsuit, she "paid off the [] $40,000.00 balance remaining on the mortgage." Importantly, the record contains no information regarding the value of the parties' marital residence beyond 1993.

As for the parties' other assets, Husband testified that "[h]e received a settlement of $100,000.00[,]" apparently for the loss of his job, "that he deposited in the partie[s]' joint bank account." Wife testified that she received approximately $12,000.00 for SSI benefits, approximately $18,000 for a personal injury settlement, and $380,000 for a wrongful death settlement. Wife testified that she used the $18,000.00 settlement to pay "her sisters back for money they had loaned her and [to get] her car windows repaired" after Husband allegedly broke all of them out. Out of the $380,000, Wife testified that several automobiles were purchased: (1) her son's car for $11,000; (2) her own car for $30,000; and (3) four cars for Husband, including one that cost $37,000.00. Additionally, with the wrongful death settlement money, Wife testified that she gave $180,000 to her children, spent $40,000 to pay off the parties' mortgage, paid some bills, and "put money" in the parties' joint bank account. She stated that "Husband spent most of the money from her settlement proceeds."

From the record, it is unclear what assets remained at the time of the parties' divorce. However, it is clear that Wife expended a substantial portion of her separate property towards the increased equity in the parties' marital home. Therefore, we cannot say, from the scant evidence before us, that the evidence preponderates against the trial court's division of the equity in the marital home.

Husband also maintains that the trial court failed to equitably divide the parties' personal property. The trial court divided the parties' personalty as follows:

[Wife] shall retain the following: Cherry make-up table, Dining Room Table and chairs, Bedroom furniture, Kitchen appliances, Miscellaneous art work, Porcelain bowls[,] Hewlett Packard Computer, (2) 19" televisions, Big Screen television, DVD and VHS collections[,] Records, tapes and CDs, Ceramic Stove and attached microwave, Refrigerator, Chowbella, the dog[,] Various items of costume and fine jewelry, [Wife's] daughter's sofa and loveseat and computer. [Husband] is awarded the "Lord's Supper" painting and the following item[s] already in his possession: Cherry desk and chair, Computer Desk, Microwave, (2) Comforter sets, Towels, Palm pilot, Sterling silver Brush + comb set, 19" TV/VCR combo, (2) VCR[]s, Pictures, wedding album and video Camcorder, Tapes Books and Videotapes.[8]

On appeal, Husband's argument concerning the division of personal property states only that "the court failed to [] consider an equitable division of parties personal property. [Husband] was the sole provider of [Wife] from January 6, 1999 until [Wife] fil[ed] the divorce. The court awarded [Wife] a majority of the personal property."

The record does not establish, nor does Husband allege, that the above-mentioned personalty was marital property subject to equitable division.[9] Furthermore, Husband has failed to explain *how* the trial court's division of personalty was inequitable. Thus, we find the evidence does not preponderate against the trial court's division of said personal property.

### C.   Alimony

"The amount and duration of alimony are issues with respect to which the trial court exercises wide discretion." *Mitts v. Mitts*, 39 S.W.3d 142, 146 (Tenn. Ct. App. 2000) (citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996)). "Therefore, appellate courts are disinclined to second-guess a trial court's decision regarding spousal support unless it is not supported by the evidence or is contrary to public policy." *Cole v. Cole*, No. M2006-00425-COA-R3-CV, 2008 WL 1891436, at *4 (Tenn. Ct. App. Apr. 29, 2008) (citing *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994)). There are no hard and fast rules for determining whether spousal support is appropriate. *Id.* (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996)). Instead, the

---

[8] Neither the record, nor Husband's brief states the value of the personal property.

[9] We note that Husband's "Local Rule 14(d) Memorandum" states that Husband "accumulated" the following property "over the year during his ministry[:]"

Big Screen TV
Lord Supper Paintings
Religious Books and Tapes
Trophies and Plaques
Personal Photographs
Ministry Documents
Videos Tapes/DVD/CDs

determination of spousal support often hinges on the unique facts of a case, when considered against the factors set forth in Tennessee Code Annotated section 36-5-101(d)(1)(A)-(L). *Id.*; *see also Mitts v. Mitts*, 39 S.W.3d 142, 146 (Tenn. Ct. App. 2000).

The different types of alimony available in Tennessee are outlined in Tennessee Code Annotated section 36-5-121, which states, in pertinent part, as follows:

(d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).

(2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(3) Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (I), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).

(4) An award of alimony in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible. . . .

. . . .

(e)(1) Rehabilitative alimony is a separate class of spousal support, as distinguished from alimony in solido, alimony in futuro, and transitional alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

. . . .

(f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

. . . .

(I) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

-11-

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The "Statement of Evidence" reveals Husband's work history. At trial, forty-nine year old Husband testified that he was terminated from his job with the Shelby County Government in April 2004, and that he is currently employed as a bus driver. Included in the record is Husband's June 2008 "Earning Statement" from his employer, which shows a gross weekly pay of $846.48, and after deducting taxes and Husband's two child support obligations, shows a net weekly pay of $454.78. Also included in the record before us is an "Affidavit [of] Income and Expenses of [Husband]" dated July 1, 2008, wherein Husband, contrary to his "Earning Statement," claims a gross monthly income of $1706.13 and a net monthly income of $857.46. In his affidavit, Husband claims monthly expenses of $1,109.00, excluding any spousal support obligation to Wife.

According to the "Statement of Evidence," at the time of trial in 2008, Wife was fifty years old, had attended college for two years, and had previously worked both in customer service and "for the IRS as a tax person." However, Wife had not worked since 1997, when she left her job as a "cafeteria worker." She testified that she "had surgery for a ruptured disk in 1994 or 1995[,]"and that she has "Circle of Willis syndrome" and "syncope, [which causes her to] faint[] for no reason." Because of these "fainting episode[s,]" Wife stated that she does not drive. She also testified to being unable to work in bookkeeping because she takes Darvocet and Banflex, which cause drowsiness. She stated that "[h]er chronic pain and Circle of Willis syndrome [are] permanent." According to her "Statement of Income and Expenditures[,]" Wife receives the following monthly benefits: (1) $637.00 in "S.S. benefit payment"; (2) $162.00 in food stamps; and (3) $500.00 in spousal support. Thus her total monthly income, including spousal support, is $1,299.00, while her monthly expenses total $1,389.11.

In its "Final Decree of Divorce," the trial court found as follows:

In giving consideration to the needs of the Parties - both tangible and intangible, [Husband] is found to have greater employability. In giving consideration to the factors articulated in T.C.A. [§] 36-5-121, particularly the longevity of the marriage, the age of the Parties, the respective health of the Parties, the respective mental health of the Parties, the respective vocational skills of the Parties, [Wife's] position is worse as opposed to [Husband].

On appeal, Husband argues that the trial court erred in ordering him to pay rehabilitative alimony and alimony in futuro to Wife, as Wife "failed to prove she was not capable of working[, and f]urther, there was not a great disparity between [Wife's] income and [Husband's] income." Furthermore, Husband argues, essentially, that the trial court erred in awarding *both* rehabilitative alimony and alimony in futuro. He contends that because the trial court believed Wife could be rehabilitated–as evidenced by its award of rehabilitative alimony–once rehabilitated, alimony should cease.

First, we note that the plain language of Tennessee Code Annotated section 36-5-121(d)(4) allows an award of *both* rehabilitative alimony and alimony in futuro "where a spouse may be only partially rehabilitated." Second, Husband cites no support, nor do we find any, that Wife is required to provide medical proof of her decreased employability. Finally, relying on Husband's "Earning Statement," we find a disparity between the parties' monthly income. After paying his spousal support obligation, Husband is left with a monthly surplus; however, Wife is left with a monthly deficit, even with receipt of such spousal support payment. We cannot say that the evidence preponderates against the trial court's award of spousal support to Wife. Accordingly, the spousal support award is affirmed.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit. Costs of this appeal are taxed to Appellant, Kenny Brewer, Sr., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

-13-