# IN THE COURT OF APPEALS OF IOWA

No. 15-1713
Filed August 31, 2016

**IN RE THE MARRIAGE OF SCOTT LYNN KASIK
AND DEBBIE LYNN KASIK**

**Upon the Petition of
SCOTT LYNN KASIK,**
        Petitioner-Appellee,

**And Concerning
DEBBIE LYNN KASIK,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Cedar County, Henry W. Latham II, Judge.


        Debbie Kasik appeals the economic provisions of the decree dissolving her marriage to Scott Kasik. **AFFIRMED AS MODIFIED AND REMANDED.**


        Kyle R. Maurer, Clarence, for appellant.

        Jase H. Jensen of Howes Law Firm, P.C., Cedar Rapids, for appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Debbie Kasik appeals the economic provisions of the decree dissolving her marriage to Scott Kasik. Debbie claims the district court inequitably allocated Scott's IPERS (Iowa Public Employees' Retirement System) account, inequitably reimbursed Scott for all the expenses incurred during the separation, inequitably allocated liability for the parties' children's student loans, and incorrectly calculated the equalization payment. We affirm as modified and remand to the district court for recalculation of the economic provisions of the decree.

## I.   BACKGROUND FACTS AND PROCEEDINGS

Scott and Debbie were married in 1993. They have three children, one of whom is a minor; custody of the child is not at issue herein.

The district court found the following facts concerning the parties:

> Scott is a 52-year-old man of good health who is currently employed as a high school math teacher . . . . In addition to being employed as a teacher, Scott over the years has at times supplemented his income through other endeavors. Scott has been a football and track coach in the school district, has provided painting services for the school district and has worked in some capacity in a pageant company. All of Scott's sources of extra income have been documented by W-2s but for the painting services he provides to the school district. In 2014 the painting services produced income of $8000 and Scott testified in 2015 he anticipates the painting services to generate income of $2000. The Court after reviewing Exhibit 1 determines the appropriate level of gross income attributable to Scott is the amount of $65,297.
> . . . .
> Debbie is a healthy 47-year-old woman who currently works as a dental hygienist. There was considerable testimony as to her current and past employment. Debbie had worked for a previous dentist offering her essentially full-time employment, but due to the dentist's workload, he eliminated her position in April of 2015. Debbie was able to obtain new employment, but only on a part-time basis. The Court finds Debbie has made reasonable efforts to obtain employment. This is the only employment she is currently

able to retain. Debbie earns $32 per hour for her work and it is estimated her yearly income is $31,700.

Scott filed a petition for dissolution of marriage on October 10, 2014 and an amended petition on November 18. On July 15, 2015, the parties filed a partial stipulation agreeing to legal custody and physical care of the minor child and to a portion of the marital assets and debts. A trial was held on July 20, 2015. The parties asked the court to determine the amount of child support, health insurance and the allocation of the tax dependency exemption for the minor child, post-secondary education subsidy, and an equitable division of the remaining assets and liabilities. The court entered a decree of dissolution of marriage on September 17, and ordered Scott to pay child support and provide health insurance for the minor child. Both parties were granted the tax dependency exemption on a rotating basis. Both parties were ordered to contribute to their children's post-secondary expenses. The court adopted Scott's property division proposal except for allowing Scott a credit against the assets payable on a "family loan" due to a lack of documentation to support the loan. The court also altered the allocation of Scott's IPERS account.

Debbie now appeals from this decree.

## II. STANDARD AND SCOPE OF REVIEW

We examine the entire record and adjudicate anew the issue of property distribution. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We will disturb the district court's ruling only when there has been a failure to do equity. *Id.* Marital property is divided equitably, considering the factors in Iowa Code section 598.21(5) (2013). *Id.* at 678. "An equitable distribution of marital

property, based upon the factors in [section] 598.21(5), does not require an equal division of assets." *Id.* at 682 (quoting *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013)). "Equality is, however, most often equitable," and Iowa courts generally insist upon an equal or nearly equal division of marital assets. *Id.* We keep in mind that "there are no hard and fast rules governing economic issues in dissolution actions." *Id.* Our decision depends on the particular facts relevant to each case. *Id.*

## III.    MERITS

Debbie claims the district court inequitably allocated Scott's IPERS account, inequitably reimbursed Scott for all the expenses incurred during the separation, inequitably allocated liability for the parties' children's student loans, and incorrectly calculated the equalization payment.

### A.    IPERS

Pension benefits are marital property and thus subject to equitable division between the parties to a dissolution proceeding. *In re Marriage of Branstetter*, 508 N.W.2d 638, 640 (Iowa 1993). There are two accepted methods of dividing pension benefits: the present-value method and the percentage method. *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996). "[T]here are two main types of pension plans: defined-benefit plans and defined-contribution plans." *In re Marriage of Sullins*, 715 N.W.2d 242, 248 (Iowa 2006). "IPERS is, of course, a defined-benefit plan." *Id.* (citing Iowa Code § 598.21(1)(b)). "Although both methods of dividing pension benefits can be used with both types of pension plans, it is normally desirable to divide a defined-benefit plan by using the percentage method." *Id.* Under the percentage

method, "the court awards a spouse a percentage of the pension payable in the future at the time the benefits mature." *Id.* at 249. The "percentage is based on the number of years the employee accrued benefits under the plan during the parties' marriage in relation to the total years of benefits accrued at maturity." *Benson*, 545 N.W.2d at 255.

Here, Scott testified that his IPERS account was valued at $138,633.02. Scott calculated its premarital value as $10,805.60 and a post separation value of $8868.67. Scott claimed the total accrued from the date of the marriage to the separation was $118,957.75. Scott proposed an equal division of the IPERS account from to the date of marriage to the date of separation. The district court allocated Debbie thirty-three percent of the IPERS account because that was "consistent with the determination there [was] a premarital amount to be excluded from Debbie's interest and the amount accumulated during the time of separation of the parties."

We find the trial court's use of this approximation method to be incorrect in two respects. Absent agreement to the contrary, and there is none, Debbie should receive half of the marital share of the IPERS account. Second, the marital share is the "percentage is based on the number of years the employee accrued benefits under the plan during the parties' marriage in relation to the total years of benefits accrued at maturity." *Benson*, 545 N.W.2d at 255. Absent an express agreement between the parties stating otherwise, the correct period of time is from the parties' marriage to the date the decree dissolved the marriage. We remand this portion to the district court to divide the IPERS account pursuant to the *Benson* formula. *See id.*

**B.      Separation Expenses**

Debbie claims the court improperly determined Scott should be reimbursed for the household expenses incurred from the date of separation to the dissolution proceeding.  Debbie believes Scott is only entitled to a credit for half of those expenses since she would have been responsible for the other half of the expenses.  Further, Debbie claims the court did not take into account the fact Scott received six of the vehicles and therefore should have been responsible for their associated expenses.

Scott claims he incurred expenses from the date the parties separated to the date of trial and he took all the expenses from the marriage.  These expenses included car insurance, car loans, cell phone bills, for Debbie and three children.  Pursuant to documentation provided by Scott, the separation expenses totaled $18,331.75.  "[T]he allocation of marital debts inheres in the property division."  *In re Marriage of Johnson*, 299 N.W.2d 466, 467 (Iowa 1980).  "Even though a debt may have been incurred by a party for family expenses, it is not inequitable to order that party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable."  *Sullins*, 715 N.W.2d at 251.  Although Debbie says she "would" have been responsible for the expenses, Scott paid the family expenses thus, saving Debbie from paying half and accordingly Scott should receive credit for the payments.  We affirm the court's allocation of the expenses incurred during the separation.

**C.      Student Loans**

Debbie claims the court improperly determined she should be partially responsible for the repayment of existing student loans taken out by Scott for the

benefit of the parties' children.  At the time of trial, Scott's credit report showed he had five Department of Education student loans totaling $57,428.  He testified the loans were taken out in his name and the parties' children's names for college education expenses.  The loans were taken out during the marriage, and therefore are properly considered marital debts.  "Debts of the parties normally become debts of the marriage, for which either party may be required to assume the responsibility to pay."  *Sullins*, 715 N.W.2d at 251.

Scott's property division proposal, as adopted by the district court, listed the children's student loan debt solely as his liability.  The district court found that Debbie's testimony about her lack of knowledge of the loans and other statements minimizing her awareness of the loans was not credible.  Debbie did testify that she acquired student loans in her own name and for one of the children.  We see no reason to make a different credibility finding concerning this testimony and affirm the ruling of the district court that Scott be responsible for the loans but that Debbie share in the responsibility through an equalization payment.

Having reviewed the ruling of the district court concerning the post-secondary education subsidy order, we remand, as the ruling does not follow the statutory scheme for calculating such a subsidy.  *See* Iowa Code § 598.21F; *see also Sullins*, 715 N.W.2d at 253.  On remand, the district court should apply the statutory scheme in section 598.21F for each child's postsecondary education expenses.  The amount to be paid by each party should not "exceed thirty-three and one-third percent of the total cost of postsecondary education."  Iowa Code § 598.21F(2)(c).

**IV. CONCLUSION**

We affirm in part and remand the district court's allocation of Scott's IPERS account to apply the correct time period—from the date of the marriage to the date of the issuance of the decree.  The parties are equally responsible for the expenses incurred during the separation and for the children's student loans taken out during the marriage; these debts shall be distributed by an adjustment to the equalization payment previously ordered for an equitable distribution of the parties' marital assets and liabilities. The postsecondary education subsidy shall be recalculated pursuant to Iowa Code section 598.21F.

**AFFIRMED AS MODIFIED AND REMANDED.**