**IN THE COURT OF APPEALS OF IOWA**

No. 16-1784
Filed June 21, 2017

IN RE THE MARRIAGE OF CAROL LYNN GUPTON
AND WENDEE KAY BROWN

Upon the Petition of
CAROL LYNN GUPTON,
        Petitioner-Appellee,

And Concerning
WENDEE KAY BROWN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L.

Larson, Judge.

        Wendee Kay Brown appeals the child custody and division of property

provisions of the district court's decree dissolving her marriage to Carol Lynn

Gupton. **AFFIRMED.**

        Michael J. Winter, Council Bluffs, for appellant.

        Scott D. Strait, Council Bluffs, for appellee.

        Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Wendee Kay Brown appeals the child custody and division of property provisions of the district court's decree dissolving her marriage to Carol Lynn Gupton. Wendee claims the district court should have granted her physical care of the children, considered Carol's premarital assets in dividing the parties' assets and debts, valued Carol's business at $10,000, and entered a qualified domestic relations order. We find the district court properly awarded shared physical care, properly divided the parties' assets and debts, and entered an appropriate qualified domestic relations order. We affirm the district court.

## I. Background Facts and Proceedings

Wendee and Carol began their relationship in 1994. They started cohabiting the same year. After a brief separation they began building a new house together in Carter Lake, Iowa, in 2000. Carter Lake is located west of the Missouri River on eastern edge of Omaha. Wendee gave birth to a daughter in 2004 and a son in 2010. Carol legally adopted the daughter in 2008 and the son in 2010. After same sex marriage was legalized in Iowa, Wendee and Carol married on September 4, 2010.

Wendee worked for the Omaha Fire Department throughout the relationship, at times working twenty-four hour shifts. At the time of dissolution, Carol worked for the City of Papillion Fire Department, where she started in 2014. She previously was self-employed selling public access defibrillators.

Carol filed a petition for dissolution on September 24, 2015. Wendee and Carol separated in February 2016. Carol moved to Papillion, Nebraska, roughly

sixteen miles from Carter Lake. Carol now lives with her paramour, Elizabeth. Elizabeth has shared physical care of her own five children.

Trial was held July 19 and a dissolution decree was entered August 31. The district court awarded joint legal custody and shared physical care of the parties' minor children and divided the couple's property. Wendee and Carol filed motions to enlarge or amend findings, pursuant to Iowa Rule of Civil Procedure 1.904(2), on September 6 and September 9 respectively. The district court entered its ruling on the post-trial motions September 26. Wendee filed a notice of appeal on October 24, 2016.

## II. Standard of Review

Equitable actions are reviewed de novo. Iowa R. App. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court is given latitude to make determinations, which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

## III. Error Preservation

Carol claims Wendee did not properly preserve error. After the district court's decree both Wendee and Carol filed rule 1.904(2) motions asking the district court to enlarge or amend its findings. The district court ruled on the parties' motions, and Wendee filed her appeal within thirty days of the district court's ruling on the 1.904(2) motions. However, Wendee's appeal was filed

more than thirty days after the original decree by the court. In her brief, Carol claims Wendee's motion "was simply a rehashing of the legal and factual arguments made at trial" that should not toll the time allowed for appeal.

"An application for interlocutory appeal must be filed within 30 days after entry of the challenged ruling or order. However, if a motion is timely filed under Iowa R. Civ. P. 1.904(2), the application must be filed within 30 days after the filing of the ruling on such motion." Iowa R. App. P. 6.104(1)(b)(2). However, only a proper rule 1.904(2) motion tolls the time to appeal. *Hedlund v. State*, 875 N.W.2d 720, 725 (Iowa 2016).

> A proper rule 1.904(2) motion does not merely seek reconsideration of an adverse district court judgment. Nor does it merely seek to rehash legal issues adversely decided. A rule 1.904(2) motion is ordinarily improper if it seeks to enlarge or amend a district court ruling on a question of law involving no underlying issues of fact. Likewise, a rule 1.904(2) motion that asks the district court to amend or enlarge its prior ruling based solely on new evidence is generally improper. Ordinarily, a proper rule 1.904(2) motion asks the district court to amend or enlarge either a ruling on a factual issue or a ruling on a legal issue raised in the context of an underlying factual issue based on the evidence in the record.

*Homan v. Branstad*, 887 N.W.2d 153, 161 (Iowa 2016) (internal citations omitted).

We find Wendee's motion was proper and asked the district court to amend its ruling based on factual issues present in the record. Moreover, rule 1.904 was amended effective March 1, 2017, as have Iowa Rules of Appellate Procedure 6.101(1)(b) and 6.104(1)(b)(2), to permit an appeal within thirty days of a ruling on such a motion without the necessity of examining the propriety of the motion. Wendee's appeal was therefore timely, and error was preserved.

**IV. Custody**

Wendee claims the district court should not have awarded shared physical care of the parties' minor children. When determining custody, the best interests of the children are the "controlling consideration." *In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984). A non-exclusive list of factors has been set out by our supreme court and used to determine the best interests of the child when deciding physical care. *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974). We also consider portions of the Iowa Code. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007).

When considering whether joint physical care is in the best interests of the children, the court should consider: (1) the stability and continuity of caregiving, (2) the parents' ability to communicate, (3) a history of conflict between the parents, and (4) the degree to which the parents agree to a parenting approach. *Id.* at 696-99. These factors are not exclusive, nor should all factors be given equal weight. *Id.* at 699.

The first factor to consider is maintaining stability and the continuity of caregiving in the children's lives. Testimony at trial showed both parents had been very involved in the children's lives. Carol, the parties' daughter, a neighbor, and others testified Carol shared the responsibilities of parenting equally. Wendee testified the parties had been equally involved in raising their children until problems developed in the marriage. Wendee also testified Carol would be a good parent into the foreseeable future. We find shared physical care will ensure continuity of caregiving.

The second factor is to consider the parents' ability to communicate. The evidence in the record reveals a civil and cooperative relationship between the parents regarding the children. Both parties should be commended for their ability to put the best interests of the children before their continuing dispute. The parties have been able to maintain civil communication and flexibility regarding the children's schedules and activities. We find the parents are able to fully and effectively communicate regarding the children. This factor weighs in favor of shared physical care.

The third factor to consider is the level of conflict between the parents. The circumstances surrounding dissolution have certainly created conflict between the parties, which initially is quite common. Testimony presented at trial was split. Wendee testified the children had witnessed Carol treating her poorly and were affected by the parties' "hatred and anger." Carol claims the parties screened their conflict from the children. Private communications between the parties certainly show conflict and disagreement on many topics, but we agree with the district court's assessment "the parties have had a more strained relationship since the breakdown of their marriage . . . [but] neither party has allowed such tensions to affect their relationship with the children." This factor weighs in favor of shared physical care.

The final *Hansen* factor to consider is the degree to which the parents agree on their approach to parenting. Wendee testified Carol's morals were a bad example to the children and that the children were exposed to "moral values" Wendee disagreed with. However, both parents agree on the level of the children's involvement in extra-curricular activities. Both parents also support

and encourage the children in scholastic and extra-curricular activities. The parents also have similar approaches to discipline. This factor weighs in favor of shared physical care.

The *Hansen* factors are not exclusive and so we turn to other considerations. Wendee notes the children currently attend a school both parties agree on, however, the parties disagree what school the children should attend when they are no longer able to attend Montessori school. This issue may create problems within the co-parenting relationship and so weighs against shared physical care. The parties' eleven-year-old daughter also testified at trial. She testified she would rather live full time with Wendee. The daughter also testified Carol would become angry with her, drinks excessively, and does not interact with her or her brother when they are in Carol's care. The testimony of the daughter and her wishes weigh against shared physical care.

Wendee also argues her bond as the biological parent should weigh in her favor. She provided no case law or statute(s) in support of her assertion. In fact, after a review of relevant case law we find no preference exists. Our court has previously granted adoptive parents physical care over biological parents. *See, e.g., In re Marriage of Heifner*, No. 15-1285, 2016 WL 3556529 (Iowa Ct. App. June 29, 2016); *In re Marriage of Fondell*, No. 02-1537, 2003 WL 1970731 (Iowa Ct. App. Apr. 30, 2003); *In re Marriage of McIntosh*, No. 98-1735, 1999 WL 823646 (Iowa Ct. App. Oct. 15, 1999). We give no extra weight to the biological relationship.

On the balance of factors, we find the best interests of the children will be served by shared physical care.

## V. Property Division

Iowa is an equitable distribution jurisdiction. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). When dividing property we look to all marital assets at the time of the dissolution and exclude only gifts and inheritances. *Id.* To determine what constitutes an equitable division in a dissolution proceeding we must look to the factors listed in Iowa Code section 598.21(5) (2015). These factors include the length of the marriage, premarital property brought into the marriage by each party, the individual contributions to the marriage by the parties, age, health, earning capacity, and other relevant circumstances. *In re Marriage of Anliker*, 694 N.W.2d 535, 542 (Iowa 2005). The parties note their relationship and the comingling of funds began far before their legal marriage. However, the relationship could not have been legally recognized, even as a common law marriage, at the time they began to comingle funds and cohabit. We must calculate the length of their marriage from the legally recognized marriage on September 4, 2010.

### a. Premarital Property

Wendee claims the district court should have considered Carol's premarital assets when dividing the parties' property. Premarital property may be included when dividing property in a dissolution. *Schriner*, 695 N.W.2d at 496. The district court did not consider two premarital accounts owned by Carol totaling nearly $200,000. The district court also did not consider the premarital value of Wendee's investment account. At trial, on direct examination, Wendee asked the parties' assets be divided from the date of the marriage forward. The

district court seems to have given effect to Wendee's wishes. We find the district court did equity in setting aside those premarital assets.

### b. Valuation of Carol's Business

Wendee claims the trial court should not have valued Carol's business at $10,000. At trial, Carol testified her business, PPE, had assets worth $42,000. She further testified the business did not grow but "has maintained" the same value it had before the marriage in 2010. Wendee presented evidence showing the assets totaled $84,000. We find the trial court considered only the appreciation in value during the course of the marriage. Therefore, "we believe the findings were well within the range of the evidence and should not be disturbed on appeal." *See In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987).

### VI. Qualified Domestic Relations Order

Wendee also claims the district court entered a qualified domestic relations order (QDRO) that erroneously allowed Carol to participate in post-dissolution retirement benefit increases. Pension benefits are divisible marital property in Iowa. *In re Marriage of Branstetter*, 508 N.W.2d 638, 641-42 (Iowa 1993). Our courts have established two methods for dividing pensions: dividing the present value of the pension plan, or assigning a percentage paid when the pension benefits mature. *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996). Additionally, "there are two main types of pension plans: defined-benefit plans and defined-contribution plans." *In re Marriage of Sullins*, 715 N.W.2d 242, 248 (Iowa 2006). The district court utilized the percentage method.

Wendee's employer also offers a deferred retirement option program. This program allows Wendee to defer retirement in order to allow the retirement plan benefits to continue to grow. Wendee has not yet elected to participate in this program. Pursuant to the district court's QDRO, if Wendee received "a dividend, a cost of living increase, or any other post retirement or disability benefit increase," Carol would receive a proportionate share of the increase.

Wendee claims this distribution improperly allowed Carol to receive post-dissolution increases to her pension benefits. We have previously held spouses are not entitled to any post-dissolution increases in retirement benefits. *See In re Marriage of Klein,* 522 N.W.2d 625, 628 (Iowa Ct. App. 1994) (holding pension funds accrued after the dissolution should not be subject to division). "An increase in pension rights resulting from contributions made after a decree of dissolution but before retirement is the result of efforts made after the dissolution" and should not be included in the marital estate. *Id.*

However, under the percentage method if Carol's value is firmly established at the time of dissolution, she will receive no return on her investment. *See Benson*, 545 N.W.2d at 257. The district court's formula avoided this mistake and correctly determined the value should be set "at the time of maturity," when Wendee begins to collect the benefits, not at the time of dissolution. *See id.* We affirm the district court's QDRO and allow Carol to participate in any increases to the pension benefits in the circumstances described in the order.

**VII.    Attorney Fees and Costs of Appeal**

Carol claims she should be awarded attorney fees and Wendee should be made to pay the entire cost of the appeal.  "An award of attorney's fees is not a matter or right but rests within the discretion of the court."  *Id.* at 258.  We find an award of attorney fees is inappropriate in this case.  We assess the costs of the appeal equally to the parties.

**AFFIRMED.**