**IN THE COURT OF APPEALS OF IOWA**

No. 17-1227
Filed July 5, 2018

**IN RE THE MARRIAGE OF JULIE ANN ANKENBAUER AND
MARTYN DAVID ANKENBAUER**

**Upon the Petition of
JULIE ANN ANKENBAUER,**
        **Petitioner-Appellant,**

**And Concerning
MARTYN DAVID ANKENBAUER,**
        **Respondent-Appellee.**
_____

        Appeal from the Iowa District Court for Pottawattamie County, James M.

Richardson, Judge.


        Julie Ankenbauer appeals the economic provisions of the decree dissolving

her marriage to Martyn Ankenbauer.  **AFFIRMED AS MODIFIED.**



        Kyle E. Focht of Focht Law Office, Council Bluffs, for appellant.

        Michael J. Winter, Council Bluffs, for appellee.



        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Julie Ankenbauer and Martyn Ankenbauer were married for forty-three years at the time of the dissolution trial in May 2017. Both parties had been employed for more than thirty years and both were retired at the time of the dissolution.

During the marriage, Julie worked for the federal government. She was employed in the postal department and the Corp of Engineers. Julie retired in December 2010. In 2015, Julie cashed out her retirement account, a Thrift Savings Plan (TSP), which at that time totaled $76,192.18. From that total, $15,238.44 was withheld for federal tax, and Julie received a lump sum of $60,953.74. Julie used $43,813 to pay off the mortgage on the couple's home purchased in 1984,[1] $4275 to pay 2015 taxes on the property, and $4774 to pay a joint credit card debt. The parties placed the remaining funds in their safe, which Martyn retains.[2] In cashing out the TSP account, Julie no longer receives a monthly supplement annuity. In lieu of Social Security benefits, Julie receives benefits via an annuity from the Civil Service Retirement System (CSRS). Her gross monthly benefits are $2823 per month. Julie had been providing the couple's health insurance (via a $560 per month deduction from her monthly benefits). When she no longer carries Martyn on her health insurance, Julie's net monthly income will be $2035.[3] Her monthly

---

[1] The original mortgage was for $83,000.

[2] Martyn testified, "The money wasn't going to be invested in any kind of financial vehicle to—that was dangerous, that exposed it to loss, and that was my feeling, and it might as well stay in the safe because interest rates are so low." When asked if the money was used "to pay for any of the marital debts or anything to benefit you and Julie," Martyn stated, "No." Julie's counsel then asked, "You're keeping it for yourself?" Martyn responded, "Well, it was given to me."

[3] In 2016, the gross distribution from the CSRS annuity was $33,780. Federal income tax in the amount of $4865.40 was withheld. The verification of annuity from the United States

expenses are $1828, which includes $700 for rent. She asked that the district court award her $500 per month in spousal support and fifty percent of Martyn's Iowa Public Employees Retirement System (IPERS) benefits.

Martyn had been employed by the Pottawattamie County Sheriff's Department for about thirty years. His affidavit of financial status indicates he currently receives Social Security and IPERS benefits. Per Martyn's 2016 IPERS income verification, his net monthly income is $2496.80[4] and his Social Security statement indicates a monthly income of $1456 with no deductions, for a combined monthly income of $3952.80.[5] Martyn resides in the marital residence.[6] When asked what his monthly expenses were, Martyn testified he had paid all the household bills for last ten-month period, which totaled $5400. He stated Julie should pay one-half of that amount, but then acknowledged some of those expenses were his alone. He did not provide a statement of expenses pre-trial. When asked for his "best estimate" of his monthly expenses, he responded, "Don't have a clue." Martyn testified he would not qualify for Medicare for "twenty-four months," and he would have to purchase insurance when Julie's policy no longer covered him. He estimated coverage would cost "in the neighborhood of $600 to $700 a month."

---

Office of Personnel Management indicates a gross monthly income of $2823 and federal income tax deduction of $405.80 per month.

[4] The gross monthly benefit is $2741.71, from which $135.37 federal withholding and $109.54 state withholding is deducted.

[5] In Martyn's affidavit of financial status, he states his gross monthly income is $3952.80 and net monthly income is $3353.83. He states $424.07 is withheld for federal taxes and $174.90 for state taxes, which must be in addition to the amounts withheld by IPERS noted in the previous footnote.

[6] After the dissolution petition was filed Martyn and Julie continued to live in the same residence. Julie moved out to a rented residence about three weeks before trial.

The district court determined each party should receive fifty percent of the marital assets. The court awarded to Julie one-half the equity in the marital residence; the jewelry she had purchased during the marriage, valued at $5000; a 2003 Honda, valued at $1500; and the household goods the parties had previously divided.

The court awarded Martyn the marital residence, valued at $140,000; the numerous firearms purchased or inherited during the marriage, valued at $15,000[7]; a 2008 Honda, valued at $5500; the funds in his savings and checking accounts, in the amount of $7000; and the household goods the parties had previously divided. The court set aside to Martyn $25,000 he inherited after his mother died in 2015.[8] The court ordered Martyn to make an equalization payment to Julie for $80,000. The court did not divide Martyn's IPERS benefits and did not award spousal support. Julie filed a motion to enlarge and amend, which the court denied. Julie now appeals.

We review dissolution cases de novo. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). We will disturb a ruling only when there has been a failure to do equity. *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996).

Julie argues the economic provisions of the decree are inequitable. We agree.

> Iowa is an equitable distribution state. This "means that courts divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the

---

[7] At trial, Martyn described some of the antique weapons and estimated he purchased twenty-five to thirty guns during the marriage. Martyn has several additional guns and war memorabilia he inherited from his father. He did not provide an inventory.

[8] This, too, Martyn testified was "in the safe."

parties." All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property.

*Sullins*, 715 N.W.2d at 247 (citations omitted).

Because Martyn's IPERS benefits accrued during the marriage, they are "part of the divisible estate." *See id.* As explained in *Sullins:*

> Pensions are divisible marital property. *See In re Marriage of Branstetter*, 508 N.W.2d 638, 640 (Iowa 1993) ("Pensions in general are held to be marital assets, subject to division in dissolution cases, just as any other property." (Citations omitted.)); *see also* Iowa Code § 598.21(1)(i) (stating vested and unvested pensions are circumstances to be considered in equitably dividing property). There are two accepted methods of dividing pension benefits: the present-value method and the percentage method. *In re Marriage of Benson*, 545 N.W.2d at 255; 24 Am. Jur. 2d *Divorce and Separation* §§ 585–86, at 747–50 (1998). Additionally, there are two main types of pension plans: defined-benefit plans and defined-contribution plans. *In re Marriage of Benson*, 545 N.W.2d at 254.
> . . . .
> IPERS is, of course, a defined-benefit plan. *See* Iowa Code § 97B.49A(3) ("For active or inactive vested members retiring on or after July 1, 1994, with four or more complete years of service, a monthly benefit shall be computed which is equal to one-twelfth of an amount equal to the applicable percentage of the three-year average covered wages multiplied by a fraction of years of service."); *In re Marriage of Benson*, 545 N.W.2d at 254 ("[I]n a defined benefit plan the future benefit is specified in advance by a formula."). The plan uses a "*percentage of earnings per year of service* formula, which provides a benefit that is related to the employee's earnings and length of service."

715 N.W.2d at 247–49 (citations omitted).

It is inequitable not to divide Martyn's IPERS benefits.[9] Martyn has already shared the benefits of Julie's TSP. However, Martyn has not been awarded any

---

[9] The district court relied upon Exhibit 101 to conclude both parties had the same income. However, Exhibit 101 is the parties' 2016 Iowa Individual Income Tax Return and only reports the parties' taxable portion of their pensions, which does not accurately reflect the actual income they received. We have set forth their actual income in our recitation of facts.

of Julie's CSRS annuity. Thus, it is inequitable to award Julie one-half of Martyn's IPERS. Although Martyn's social security benefits are not divisible, we may consider the benefits in making an equitable property division. *See In re Marriage of Boyer*, 538 N.W.2d 293, 296 (Iowa 1995) ("It should not invalidate a property division if a disproportionate expectation regarding social security benefits is acknowledged in the court's assessment of the equities."). We therefore modify the decree and remand with directions that a Qualified Domestic Relations Order (QDRO) shall be entered directing IPERS to pay a percentage of Martyn's benefits to Julie consistent with Iowa Code section 97B.39. *See Faber v. Herman*, 731 N.W.2d 1, 8 (Iowa 2007). The percentage shall be calculated by a formula using the number of years of marriage in which pension benefits accumulated as the numerator and the total number of years pension benefits accrued as the denominator. *Benson*, 545 N.W.2d at 255. That fraction shall then be multiplied by twenty-five percent. The result or product of this multiplication shall be the percentage of Martyn's IPERS benefits payable to Julie. We find this modification equitable because this percentage of the benefits more equitably divides the income each party receives during retirement. Awarding half of Martyn's IPERS benefits via the *Benson* formula would provide Julie more income than Martyn, and failing to award any of the IPERS benefits to Julie would favor Martyn.

On our de novo review, we determine the distribution of the marital assets is equitable with this modification. Because both parties are retired and will have similar income and expenses, we do not award spousal support.

Julie seeks attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Sullins*, 715 N.W.2d at 255

(citation omitted).  We conclude the parties should pay their own appellate attorney fees.

Costs are to be assessed one-half to each party.

**AFFIRMED AS MODIFIED.**