# IN THE COURT OF APPEALS OF IOWA

No. 17-1974
Filed July 18, 2018

**IN RE THE MARRIAGE OF BENJAMIN WILLIAM INGERSOLL
AND JENNIFER LIZABETH INGERSOLL**

**Upon the Petition of
BENJAMIN WILLIAM INGERSOLL,**
    Petitioner-Appellant,

**And Concerning
JENNIFER LIZABETH INGERSOLL,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Montgomery County, Richard H.

Davidson, Judge.


    A father appeals the custody, child-support, and division-of-assets

determinations of a decree of dissolution. **AFFIRMED.**



    James W. Mailander and Jonathan J. Mailander of Mailander Law Office,

Anita, for appellant.

    Krisanne C. Weimer of Weimer Law, P.C., Council Bluffs, and Helen M.

Broadway Savage of Savage Law, Council Bluffs, for appellee.



    Heard by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Benjamin William Ingersoll appeals the district court's dissolution decree granting joint physical care of the child, A.M.I., with Jennifer Lizabeth Veon Ingersoll. Benjamin requests the decree be modified to place A.M.I. in his physical care. Benjamin also asks for a modification to the child support and economic provisions of the decree.

## I.     Background Facts and Proceedings

Benjamin (Ben) and Jennifer Ingersoll were married on July 13, 2014. One child, A.M.I., was born during the marriage in 2014. Jennifer has a child from a previous relationship, A.F., for whom she has sole custody. Ben helped raise A.F. since 2013, when A.F. was one and a half years old, and considers A.F. his child. During the marriage, the parties resided at a house in Villisca owned by Ben prior to the marriage. During the marriage, each maintained their own bank account as well as a joint account, and generally kept their funds separate.

Ben is employed by Wellman Dynamics in Creston as a maintenance technician working second shift. He has an associate's degree in automotive repair. He continues to live in the Villisca residence.

Jennifer worked as a registered nurse for multiple employers throughout the marriage. She has a bachelor's degree in nursing and some post-graduate education. She has a history of opioid addiction and successfully completed treatment. In April 2016, Jennifer's nursing employment was terminated under accusations of diverting medications. Shortly thereafter, Jennifer's nursing license was suspended and she pled guilty to a felony charge of prohibited acts, for which she was granted a deferred judgment and placed on probation. Jennifer is

currently unemployed aside from odd jobs. She can reinstate her nursing license following a substance-abuse evaluation, but she has not done so. She currently takes prescription medication to manage pain from fibromyalgia. Jennifer submits to regular testing with her doctor to monitor use of her medications. The records show positive results are limited to her prescribed levels of medication. Jennifer has substantial student loan debt. Jennifer has lived with her mother in Stanton since the separation.

The parties separated in April 2016. Initially, Ben and Jennifer shared placement of A.M.I. each week. Ben filed a petition to dissolve the marriage on May 31. The parties stipulated to joint legal custody of A.M.I., and each requested physical care. The district court entered a temporary order on July 1, which granted the parties temporary joint legal custody and joint physical care. Under the order, Jennifer had placement Wednesday to Sunday, Ben Sunday to Wednesday. The court set child support payments at $200 per month from Ben to Jennifer.

Following trial, the district court entered its dissolution decree on November 11, 2017. The decree granted Ben and Jennifer joint legal custody and joint physical care, with a modification requested by Ben to alternate A.M.I.'s care on Saturdays to evenly split time between parents. The decree calculated child support using some overtime hours in Ben's income and adopting Jennifer's suggested imputed income, requiring Ben to pay $325 per month in child support. The court divided the marital assets and debts, including equity in the family home, Ben's retirement accounts, and medical debts. The court also awarded Jennifer a portion of her requested attorney fees.

Ben appeals the district court ruling of joint physical care and seeks physical care of A.M.I. Ben appeals the child-support calculation, distribution of assets, and awarding of attorney fees.

## II.     Standard of Review

We review dissolution of marriage cases do novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). We will disturb the district court's ruling only when there has been a failure to do equity. *McDermott*, 827 N.W.2d at 676. Marital property is divided equitably, considering the factors in Iowa Code section 598.21(5) (2016). *Id.* at 678.

## III.     Merits

### A.     Physical Care

Ben appeals the district court's decision of joint physical care of A.M.I., claiming the district court erred in not granting him physical care of A.M.I. He contends that Jennifer's history of opioid abuse, current unemployment, and past frequent moves do not constitute a stable home for A.M.I.

In disputes about physical care, our primary consideration is the best interests of the child. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). We consider a number of factors, including those listed in Iowa Code section

598.41(3).[1]  Our core objective, in considering the factors, is to place the child in the environment most likely to bring A.M.I. to healthy physical, mental, and social maturity.  *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Ben contends that joint physical care is truly not in the best interest of A.M.I.  Ben highlights Jennifer's admitted past opioid addiction, deferred judgment for stealing narcotics from work, multiple suspensions of her nursing license, and current unemployment.  Though we share concerns about Jennifer's lack of suitable employment or a possible setback in abusing narcotics, Jennifer is sober and routinely subjected to drug tests as a precaution for prescribed medications.

Furthermore, Ben presents no evidence Jennifer has relapsed in her opioid addiction and Jennifer routinely passes her drug screening.  Ben agrees when A.M.I. is with Jennifer, A.M.I. is clean, dressed appropriately for the weather, has suffered no exceptional illness, and exhibits no unexplained bruising outside those typical and normal for a small active child.  The court found joint physical care to be in the best interests of the child.  We give weight to the factual findings of the district court, especially when considering the credibility of witnesses.  *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009).

Next, Ben claims Jennifer does not offer enough stability and highlights he has lived in the same house since 2003.  However, since the separation, Jennifer has lived with her mother and Ben offered no evidence this has had a negative

---

[1]  Iowa Code section 598.41(3) factors include: suitability of parents, if the psychological and emotional needs and development of child will suffer from lack of contact with and attention from both parents, quality of parental communication, the previous pattern of caregiving, each parent's support of the other, wishes of the child, agreement of the parents, geographic proximity, and safety.

effect on A.M.I. Furthermore, prior to the dissolution, Jennifer was the primary caregiver of A.M.I. Stability and continuity factors tend to favor a spouse who, prior to divorce, was primarily responsible for physical care. *See* Iowa Code § 598.41(3)(d) ("Whether both parents have actively cared for the child before and since the separation."); *In re Marriage of Decker*, 666 N.W.2d 175, 178–80 (Iowa Ct. App. 2003) (giving heavy weight to past primary caregiving in custody matters). We continue to believe stability and continuity of caregiving are important factors that must be considered in custody and care decisions.

Jennifer maintains Ben's employment is an obstacle, making it difficult for him to be the primary caregiver. We tend to agree. Ben works second shift—from 2:00 to 11:00 p.m.—requiring Ben to rely, virtually every day, on his mother and grandmother to help care for A.M.I. Typically, on weekdays either Ben's mother or grandmother picks up A.M.I. from daycare and keeps her overnight until returning to Ben for the morning. Extending physical care to Ben would require him to either further rely on his family or seek new employment. Additionally, he frequently works overtime in his current employment, which is sometimes mandated. The joint physical care arrangement maximizes A.M.I.'s time allocation with both parents while decreasing Ben's reliance on his family to help provide care and giving Ben more flexibility with his work schedule.

A.M.I is adjusting to joint physical care with her parents; to disturb it would further place emotional stress on the child. *See Williams*, 589 N.W.2d at 762 (placing great emphasis on achieving emotional stability for children). We consider the opportunity to maximize continuing physical and emotional contact with both parents when awarding physical custody. Iowa Code § 589.41(1); *see Gensley*,

777 N.W.2d at 714. Both parties presented character witnesses who testified to their ability to care for A.M.I. and being a good parent. We see no evidence joint physical care is unreasonable and not in the best interests of A.M.I. We affirm the district court's order for joint physical care.

### B. Child Support

Ben claims the district court should not have included overtime wages in calculating his net monthly income for child support purposes. He also claims the court should have imputed a higher income to Jennifer. Iowa Court Rule 9.14(3) establishes the steps to calculate a parent's child support obligation in the case of joint physical care.

The purpose of the child support guidelines is to provide for the child's best interests after considering each parent's proportional income. *McDermott*, 827 N.W.2d at 684. In order to apply these guidelines, the district court must determine the parents' current net monthly income. *McKee v. Dicus*, 785 N.W.2d 733, 739 (Iowa Ct. App. 2010). This determination is made based upon the most reliable evidence presented. *Id.* at 740.

Overtime wages are generally included within the definition of gross income to calculate net monthly income for child support purposes. *In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992). If the overtime in uncertain, speculative, or appears to be an anomaly, then deviation may be appropriate. *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005). The child-support obligation should not be so burdensome as to require overtime to satisfy it. *Brown*, 487 N.W.2d at 333.

Ben's overtime has been consistent, appears it will continue to be consistent, and is somewhat voluntary. He is not required to work overtime to satisfy his child support obligation. In fact, the court's calculations account for a lower number of overtime hours Ben would be working due to the custody modification. The district court correctly included Ben's overtime wages in its calculations.

Ben also argues Jennifer's income should be calculated based on her last year of full-time employment. His calculation presumes that upon the restoration of her nursing license, Jennifer would be able to obtain employment at the same wage level as prior to her suspension. He has provided no evidence that this is the case. Generally, the use of earning capacity in place of actual earnings requires a finding that using actual earnings would result in substantial injustice. *In re Marriage of Nielsen*, 759 N.W.2d 345, 348 (Iowa Ct. App. 2008). Here, we find Jennifer's addiction and subsequent termination did not act as a voluntarily reduction in her income. She also testified to her attempts to obtain employment and her difficulties finding work. The district court acted properly in imputing a reasonable income to Jennifer in its calculations based on the jobs she had applied for.

In the event Ben no longer has consistent overtime hours available, or if Jennifer obtains employment paying more than the imputed income, Ben can file an application for modification. We affirm the child-support provisions of the dissolution decree.

### C.    Economic Provisions

All property of the marriage other than gifts and inheritances is divisible property—including property owned prior to the marriage by either party.  *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).  The court's division of property from a marriage is guided by the factors set out in Iowa Code section 598.21(5).  Among the statutory factors considered are the length of marriage, premarital property, contributions of each party to the marriage, age of the parties, emotional and physical health of the parties, earning capacity of each party, and others.  *See* Iowa Code § 598.21(5).  However, any relevant factor may be considered to achieve the objective of dividing the property in a fair and equitable manner.  *In re Marriage of Burgess*, 568 N.W.2d 827, 828 (Iowa Ct. App. 1997).  The court must consider both financial and non-financial contributions in determining an equitable distribution.  *In re Marriage of Fennelly*, 737 N.W.2d 97, 103–04 (Iowa 2007).

### 1.    *Home equity*

Although the home in Villisca was owned by Ben prior to the marriage, it is included in divisible property.  *See Sullins*, 715 N.W.2d at 247.  At trial, Ben estimated the equity of the house at $16,000—valuing the house at approximately $91,000, with a mortgage of $40,000, home equity loan of $10,000, and $25,000 owed toward solar panels installed post-separation.

The court granted Jennifer a fifty-percent share of the equity during the marriage—$2111.  Ben testified to having very little equity in the house when he married Jennifer but now claims the $16,000 represents a decrease in equity in

the home.[2] Ben also testified as to completing numerous home-improvement projects during the marriage, which would have increased the equity. We find the evidence supports the court's increase in equity of the house during the marriage, and that the court's determination is equitable.

2. *Retirement benefits*

Pension and retirement benefits are marital property and thus subject to equitable division between the parties to a dissolution proceeding. *In re Marriage of Branstetter*, 508 N.W.2d 638, 640 (Iowa 1993). There are two accepted methods of dividing retirement benefits: the present-value method and the percentage method. *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996). "Although both methods of dividing pension benefits can be used . . . , it is normally desirable to divide a defined-benefit plan by using the percentage method." *Sullins*, 715 N.W.2d at 248. Under the percentage method, "the court awards a spouse a percentage of the pension payable in the future at the time the benefits mature." *Id.* at 249. The "percentage is based on the number of years the employee accrued benefits under the plan during the parties' marriage in relation to the total years of benefits accrued at maturity." *Benson*, 545 N.W.2d at 255.

Both Ben and Jennifer had retirement accounts during their marriage. Jennifer cashed out her accounts of approximately $2700 to pay toward her legal bills. Ben had approximately $20,000 in his IRA and 401K account at the time of the hearing from contributions both before and during the marriage. The court

---

[2] We note Ben decreased the home's equity following the separation from Jennifer, taking out a loan for solar panels in an amount greater than the increase in value attributable the asset.

awarded fifty percent of the marital interest in Ben's accounts to Jennifer. The court properly ordered a QDRO be prepared to limit any distribution to accumulations and earnings accrued during the marriage. The court found Jennifer's retirement accounts to be "nominal" and determined she would retain sole ownership of those funds. Given Jennifer's financial circumstances, the minimal nature of her accounts, and the use of the assets, we do not find the determination inequitable.

      3.      *Other financial divisions.*

"[T]he allocation of marital debts inheres in the property division." *In re Marriage of Johnson*, 299 N.W.2d 466, 467 (Iowa 1980). "Even though a debt may have been incurred by a party for family expenses, it is not inequitable to order that party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable." *Sullins*, 715 N.W.2d at 251.

The court assigned a medical bill relating to A.M.I.'s birth to Ben. Insurance paid an amount to cover the bill directly to the Ingersolls, and Ben invested the money into a boiler for the house rather than paying the medical bill. The court found Ben retained the boiler, had negotiated down the amount of the bill, and was in a better financial position to pay the bill, and so assigned the debt to him, along with $147 owed to a collections agency from what is thought to be another medical debt. Given Ben's continued benefit from using the money for a wood boiler rather than the medical bill and his ability to pay, we find the distribution equitable. The court also relieved Jennifer of A.M.I.'s 2016 medical costs submitted by Ben based on her current circumstances with lack of income and substantial student debt.

Other assets at issue include $750 in proceeds from Ben's sale of a rifle owned by Jennifer and $1000 in lottery winnings by Jennifer in 2016. The proceeds from the rifle belong to Jennifer as proceeds from the unauthorized sale of premarital property that would have otherwise been distributed her. The court made no ruling on the lottery winnings, which were won prior to their separation. Given Jennifer's substantial debts, the winnings were likely spent or diverted to debt payments or expenses for the family before the parties separated.

The district court's distribution of assets and debts was equitable. We decline to change the economic provisions of the decree.

4. *Attorney Fees*

We review the district court's award or denial of trial attorney fees for an abuse of discretion. *Sullins*, 715 N.W.2d at 255. Whether attorney fees should be awarded depends on the parties' respective abilities to pay. *Id.* In addition, the fees must be fair and reasonable. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). An award of trial attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). We find the trial court correctly assessed the respective abilities of the parties to pay and affirm the award of attorney fees.

**D.     Appellate Attorney Fees.**

Jennifer requests an award of appellate attorney fees. This court has broad discretion in awarding appellate attorney fees. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). An award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and

the relative merits of the appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We deny Jennifer's request for attorney fees.

**AFFIRMED.**